On October 22, 1932, D.R. Hearon, a plaintiff herein, and his wife, Martha Hearon, conveyed unto W.L. Davis and his wife, Gertrude Hearon Davis, the East One-Half of Southwest Quarter of Northwest Quarter (E. 1/2 of S.W. 1/4 of N.W. 1/4), Section 19, Township 23 North, Range 10 West, containing twenty (20) acres, more or less, in Webster Parish. The consideration of the transfer is declared therein to be $25 in cash, "and other considerations, as follows:
"That the said W.L. Davis and Gertrude Davis shall take care of the said D.R. Hearon and Martha Hearon the remainder of their lives, providing for their needs and making them comfortable, bearing all expenses through health and sickness."
It is declared in this instrument that the grantors do thereby "grant, bargain, sell, convey and deliver" said land.
Mrs. Hearon died on November 19, 1934, leaving as her sole heirs and legal representatives, two sons, J.T. and C.R. Hearon, and two daughters, Mrs. Gertrude Davis and Mrs. Essie Carson. The present suit was filed on May 31, 1939. Plaintiffs therein, in addition to D.R. Hearon, are J.T. Hearon, C.R. Hearon and Mrs. Carson. W.L. Davis and his wife and five other persons to whom they sold portions of the land and a grantee of another purchaser are impleaded as defendants. The plaintiffs attack the conveyance by the Hearons to the Davises on several grounds and pray that that instrument be adjudged null and void; that the conveyances by the Davises to the other defendants be likewise adjudged; and, finally, they pray to be decreed the owners of the land.
In the original petition it is charged that the Davises failed to comply with the onerous condition imposed upon and assumed by them in said conveyance in that they did not take care of said D.R. Hearon nor did they provide for his needs and make him comfortable through health and sickness at their own expense.
It is shown that D.R. Hearon and his wife lived in the residence on the land with the Davises from the date of the instrument until she died. For this reason, it is not alleged that as to her the Davises failed to discharge their obligations. The Hearons were living in said residence when the conveyance was executed.
By supplemental petition, plaintiffs additionally attack the conveyance to the Davises as being null and void on the following grounds, to-wit:
1. That the cash consideration therein expressed is vile and insignificant, out of all proportion to the true value of the property, and is not serious.
2. That it is a donation in disguise.
3. That at the time of the donation, the donors did not reserve for themselves sufficient property for their subsistence as is required by Article 1497 of the Civil Code.
All defendants filed exceptions of no cause and no right of action, pleas of estoppel, motion to elect and to strike out the supplemental petition. Four of them filed a joint exception of prematurity. All these preliminary pleas and exceptions were overruled and defendants answered with full reservation of rights thereunder.
W.L. Davis and his wife filed a joint answer. They aver that from the date of the deed to them to the time of Mrs. Hearon's death, she lived with these defendants and in every respect their obligation to her under said deed was fully discharged and for this reason her children, who are plaintiffs, have no interest in the property in contest and are estopped to assert ownership thereof; that D.R. Hearon lived with respondents from date of said deed until January, 1939, and during this time he received at their hands the care and attention due him under said deed; that on the latter date he left respondents' home at the instance of the other plaintiffs and has not returned; that respondents have been and are now ready and willing to render to him the duties assumed by them under the covenants of the deed. They further aver that when the several deeds to portions of said land were executed by them, D.R. Hearon was living in their home and was present when the deeds were signed, fully concurring therein and assuring each purchaser that the title to the property was good and that the conditions of the deed had been fully carried out; that because of this action D.R. Hearon is estopped from challenging the validity of defendants' titles. *Page 790 
In the alternative, these defendants plead that they supported and maintained D.R. Hearon in their home for six years and two months, and that should it be finally adjudged that the deed to them is invalid for the reasons alleged upon, in such event they should have judgment against him at the rate of $20 per month and at like rate for twenty-five months against all plaintiffs, except D.R. Hearon, for board and lodging of Mrs. Hearon to the date of her death.
The Davises sold 8.35 acres of the land to W.T. Von Colln, Jr., 1 acre to B.M. and Annie Lee Teague, 1 acre to John W. Williamson, 8.24 acres to J.L. Burrell, and 1/2 acre to George Bolen. B.M. and Annie Lee Teague sold their 1 acre to J.L. Burrell. John W. Williamson sold his 1 acre to G.J. Sims and he to J.L. Burrell. Therefore, the entire 20-acre tract, less a 30-foot strip on its west side, dedicated as a street, stood when this suit was filed, as best we can determine, as follows:
W.T. Von Colln, Jr. 8.35 acres George Bolen .50 " J.L. Burrell 10.24 "
The three present owners, the Teagues and G.J. Sims were made defendants. Williamson was not impleaded.
W.T. Von Colln, Jr., George Bolen and J.L. Burrell answering, in substance, adopted the allegations and defenses, as far as pertinent, set up by the Davises in their answer.
Von Colln, Jr., also alleged that competent counsel advised him that the consideration in the deed to the Davises was ample to its character as a sale; that the period for any contest on account of lesion had passed and that he would be safe in relying upon the public records in making the purchase from the Davises; that acting upon this advice, he purchased the property in good faith and paid for it; that the onerous provision of the deed to the Davises did not run with the title to the land as the same is merely a personal obligation between them and the Hearons. He also alleges that he went into possession of the acreage he purchased from the Davises and erected thereon improvements of a value of $375. In case of eviction, he prays to be decreed a possessor in good faith and for judgment against plaintiffs for the value of the improvements placed upon the land. He also called the Davises in warranty and prayed for judgment against them for the price of said land, in the sum of $240, in event of eviction.
The answer of George Bolen is practically the same as that of Von Colln. He alleges that he took actual possession of the one-half acre purchased by him from W.L. Davis and wife and placed improvements thereon of a value of $488.15, for which he prays for judgment against plaintiffs should he be evicted. He called the Davises in warranty and prayed for judgment against them in event of eviction for $65, the price paid for the land.
Burrell's answer tracks that of Bolin and Von Colln. He also alleges that he went into actual possession of the land he purchased from W.L. Davis and placed improvements thereon of the value of $510. He prays for judgment for this amount in the event his title is held invalid. He also calls in warranty the Davises, B.M. and Annie Lee Teague and G.J. Sims. In the alternative, he prays for judgment against said warrantors for the prices expressed in the deeds by them to him respectively.
Answering the calls in warranty made upon them, the Davises admit making warranty deeds to the defendants for the prices alleged by them and expressed in the several acts of sale, and that under their warranty they are liable to their vendees for the prices paid them.
B.M. and Annie Lee Teague, in answer to the call in warranty made upon them, admit selling by warranty deed to J.L. Burrell the 1 acre of land which they had purchased from the Davises and for the same price. They pray for judgment against their vendors for the same amount and to the same extent as may be rendered against them and in favor of Burrell.
The lower court found and held inter alia that the conveyance by the Hearons to the Davises is a donation; that the donors at the time did not reserve for themselves sufficient property for their subsistence and, for this reason, the donation was annulled as a whole. The reconventional demand of the Davises was rejected. There were judgments for the value of the improvements and on the calls in warranty. All defendants and all warrantors procured orders of appeal. Appeals were perfected only by Von Colln, *Page 791 
B.M. and Annie Lee Teague, J.L. Burrell, G.J. Sims and George Bolen.
Plaintiffs, appellees, here complain of the court's evaluation of the improvements and pray for decreases therein. As they have not appealed and have not answered the appeal perfected by others, their plea cannot be considered. Appellants are satisfied with the values as fixed by the court. Since the Davises have not appealed nor have they answered the present appeal, the rejection of their reconventional demand and the judgments against them as warrantors may not be examined here with the view of favorable revision. This leaves for determination only the issue as to the character, effect and validity of the conveyance by the Hearons to the Davises, and the court's rulings on the pleas and exceptions.
All exceptions and pleas filed below, except the motion to elect, are urged here.
The exception of prematurity has as its basis the admitted fact that prior to filing the suit no tender was made to the Davises of the $25 named as part of the consideration of the deed under attack, nor was restitution made to them for having cared for the Hearons for the periods mentioned. This plea was appropriate only to the Davises. It was personal to them. But, we do not find in the record such a pleading on their behalf. One was filed on behalf of four of the other defendants. Anyway, the rulings of the trial judge on this and the other exceptions and pleas, insofar as such rulings exclusively affect the interest of the Davises, for the reasons above assigned, are not before us. In addition to this, such a contention, it is held in Harris v. Wafer et al., 113 La. 822, 37 So. 768, is untenable.
The motion to strike the supplemental petition and the plea of estoppel are cumulatively tendered. Argument for and against the one has equal application to the other. These pleas are predicated upon the premise that since plaintiffs attached to and made a part of their original petition the instrument attacked, they are bound by the contents thereof and their judicial allegations in which (so exceptors aver) they say said instrument is a valid sale; that the allegation of the supplemental petition that said instrument is in reality a disguised donation is contradictory of and inconsistent with allegations of the original petition.
We think there is no contradiction, legally speaking, between the two petitions. Plaintiffs do not specifically nor by inference affirm the validity of said instrument. They simply allege in their original petition that for failure on the part of the grantees to comply with the onerous condition imposed upon and assumed by the grantees, said instrument should be annulled and revoked. No reference specifically is made to the cash portion of the consideration. They did not deny that it was paid nor do they at this time. On the contrary, they virtually admit it was paid but contend that the amount was vile, not serious, and inadequate to change the character of the instrument from that of donation to that of sale. In effect, their position is that the payment of $25 was merely an incident to the confection of the transfer, the real character of which is that of donation.
It is not inconsistent to say that an instrument, on its face apparently a donation, is null and void for breach of covenants therein and in the same breath also assert that the instrument is null and void because it violates Article 1497 of the Civil Code. Such an instrument may be set aside as violating said article, although the conditions imposed upon the donee be fully discharged.
Estoppel is not favored in law. To warrant upholding such a plea there should be no doubt of it being well founded. In the recent case of Sanderson et al. v. Frost, 198 La. 295,3 So.2d 626, the court laid down the rule that a pleader is not estopped by judicial allegations which have neither deceived nor damaged anyone.
It is alleged in the original petition that Mrs. Hearon lived with the Davises until her death. As to her, at least, defendants assert the conditions of the deed were complied with; that as the property was a community asset, her one-half interest therein is free from the pursuit of her heirs, the plaintiffs. The exceptions of no cause and no right of action are partly based upon these allegations and such deductions as may rationally be drawn therefrom. The conclusion we have reached on the merits of the case obviate a decision of the issue tendered by these exceptions. The case of Harris v. Wafer et al., supra is pertinent. So far as concerns D.R. Hearon, the exceptions tender the same *Page 792 
question as was tendered by the exception of prematurity which was disposed of adversely to exceptors' contentions in our discussion thereof.
This brings us to the merits of the case.
Defendants strongly rely upon the contention that the transfer to the Davises is a sale and that because of its recitals to that effect and that it declares part of the price was paid in cash, they are protected in their acquisition of the land.
The twenty acres of land with improvements thereon, when transferred to the Davises, was well worth $800. The residence thereon was in a good state of repair. Practically all of the tract was in a state of cultivation.
When the deed was made to the Davises, Mr. Hearon was seventy years of age. His earning power was negligible. The same may be said of Mrs. Hearon. The Davises had no permanent home and were invited to leave their place in Arkansas, take up residence with the Hearons, assume charge of the property and operate it to best advantage. The offer was accepted and the transfer followed. It is clear that this transfer was made because of the agreement on the part of the Davises to support and care for the Hearons for the remainder of their lives. This agreement was the true and we feel sure, the sole motivating cause for the execution of this rather unusual contract. These old people needed companionship and assistance of a material character in their old days and reposed in their daughter and son-in-law the maximum of confidence. They thought that by concluding this agreement with them, their troubles and anxieties were ended.
We think the $25 cash payment on account of the price, if paid, had no real influence in confecting the deed. Certainly the property would not have been conveyed for this mere bagatelle, but doubtless would have been conveyed without it. This small payment was a mere incident to the transaction. Anyone examining the public records and reading the instrument with a view of purchasing the property or any part of it would unquestionably have decided that its real and true consideration was not the $25 but the onerous condition incorporated therein; and this being true, the character of the act as a donation should have been apparent.
When the value of the property deeded to the Davises is considered, it becomes manifest that the cash price mentioned in the act is vile, not serious and out of proportion to such value. This fact is self-evident and binding on third persons.
The testimony proves beyond dispute that when the transfer to the Davises was made, the Hearons did not have remaining or reserved a sufficiency of property to provide them subsistence. They did own another tract of 20 acres and a few head of stock from which they derived meager revenues. It is shown that Mr. Davis, through indefensible methods, acquired title to this 20 acres and sold it for his own account. He succeeded in having Mr. Hearon placed on government relief and benefited from the money received in this way.
Article 1497 of the Civil Code reads as follows:
"The donation inter vivos shall in no case divest the donor of all his property; he must reserve for himself enough for subsistence; if he does not do it, the donation is null for the whole."
It has frequently been held that where this article has application, the fact that the donee has agreed and obligated himself to care for and support the donor for life does not affect the donor's right to demand a dissolution of the contract. It is the same as if the instrument had been an outright donation with no such condition imposed. The onerous provision of such a contract does not serve as a consideration therefor. Georges Lagrange v. Barre et al., 11 Rob. 302; Mrs. Mary Beaulieu v. Mrs. Mary V. Monin et al., 50 La.Ann. 732, 23 So. 937; Harris v. Wafer et al., supra; Litton et al. v. Stephens et al., 187 La. 918,175 So. 619.
Three circumstances must concur to constitute a sale, to-wit:
The thing sold, the price, and the consent. Civil Code, Article 2439. Concerning the character of the price needful to the consummation of a sale, it is said in Article 2464 of the Civil Code:
"* * * It ought to be serious, that is to say, there should have been a serious and true agreement that it should be paid.
"It ought not to be out of all proportion with the value of the thing; for instance the sale of a plantation for a dollar could *Page 793 
not be considered as a fair sale; it would be considered as a donation disguised."
In Spanier v. De Voe et al., 52 La.Ann. 581, 27 So. 174, 175, the court considered what purported to be an act of sale, the price of which was declared to be $5 and the love and affection for the grantee who was a daughter of the grantor. It is said in this opinion:
"We pass to the question of the consideration for the execution of the deed. The amount claimed by the defendant as the price, being only five dollars, we do not think was intended as serious, and for that reason we must hold that no value has been given. The love and affection of the mother for the daughter, as stated in the deed, was, doubtless, the moving cause actuating the mother to donate the property. The five dollars was a mere incident, amounting to nothing as compared with the value of the property. Article 2464 of the Revised Civil Code sets out that the price should not be out of all proportion with the value of the thing; that the sale of a plantation for a dollar could not be considered as a fair sale, but as a donation disguised. Pothier says that a price which is out of all proportion with the value of the thing sold invalidates the sale, and that such a contract is a donation improperly called a sale. Pothier, Contrat Devante, 19, approvingly cited in D'Orgenoy v. Droz, 13 La. 382. Under these authorities, the instrument in question must be considered as a donation and not a sale."
In Litton et al. v. Stephens et al., supra, there was involved a donation by a father to a daughter, the consideration of which was that she would care for the donor for the remainder of his life. The donee sold the land. The court declared the act null and void ab initio because the donor did not reserve for himself sufficient property for a subsistence. The fact that the land had been purchased from the donor, it was held, did not prevent the demand for dissolution.
Whether or not a donor reserves to himself sufficient property to provide him with subsistence is a question of fact, which, of course, the public records do not disclose. However, a purchaser from the donee assumes the risk of losing the property to the donor if the facts warrant application of the rule laid down in Article 1497 of the Civil Code.
It may be true, as contended, that Mr. Hearon stated to some of the persons who purchased from the Davises, prior to closing sales, that the title of the Davises to the land was good and valid; if so, he was wholly ignorant of his legal rights. Verbal statements of this character are not sufficient to bar him from correcting that which has been done contrary to a prohibitory law. The donation was absolutely null and void ab initio, and this is true although the nullity be not formally declared. Article 12 of the Civil Code. Verbal declarations of the sort mentioned are wholly impotent to invest such an instrument with legal vitality. In the Sanderson case, supra, the court positively announced that a donation which violates Article 1497
of the Civil Code is not translative of property.
The record does not support the allegation that before purchasing, the persons who bought from the Davises examined the public records and procured the advice of competent counsel that the title to the land was valid and acted thereon. In matters of this character the public records operate as notice to all persons.
The good faith of the purchasers of the land is not questioned. There is a strong presumption that they so acted.
The lower court properly incorporated in its judgment a provision authorizing the defendants to retain possession of the lands they purchased from the Davises or their vendees until the value of the improvements had been paid.
Judgment was rendered for and against John W. Williamson. He is not a party to the suit. We merely mention this fact in passing.
For the reasons herein assigned, the judgment appealed from is affirmed.
DREW, J., is recused.
HAMITER, J., concurs. *Page 794