SANDERS, Justice.
 

 In this action, the plaintiff, Plaquemines Equipment & Machine Co., Inc., asserts ownership of a Ford truck, which it caused to be seized under a writ of sequestration in the possession of The Ford Motor Company. The district court found that the
 
 *204
 
 plaintiff had no title to the truck and dissolved the writ of sequestration. On appeal, the Court of Appeal affirmed, but remanded the case for a hearing on the entitlement of The Ford Motor Company to damages resulting from the wrongful sequestration.
 
 [1]
 
 We granted a writ of certiorari to review the judgment of the Court of Appeal.
 

 The facts in the instant case are not in serious dispute. On January 19, 1961, Plaquemines Equipment entered into a contract to purchase a specially built Ford truck from Pearce Ford, Inc., a New Orleans dealer. The cab and chassis (assembled with special parts and equipment) were to be secured by the dealer from The Ford Motor Company. Pearce Ford was then to have installed on the chassis a special oil field body, a heavy winch, and other mechanical equipment. The price of the unit, composed of the cab, chassis, oil field body, and special equipment, was $6,029.18. Plaquemines Equipment made an initial deposit of $707.30 on the purchase price. Upon delivery of the new unit, Plaquemines Equipment was to transfer to the dealer a used Ford truck for a trade-in allowance of $800.00 and pay the balance of the price in cash.
 

 After The Ford Motor Company had assembled the cab and chassis at the factory, it shipped the equipment to Pearce Ford, where it arrived on or about March 11, 1961. The equipment was accompanied by a “Manufacturer’s Statement of Origin,” evidencing a transfer of the cab and chassis to Pearce Ford. In the meantime, all of the automotive stock of Pearce Ford had been seized by Associates Discount Corporation, in execution of mortgages held by it under the dealer’s financing plan. Subsequently, Pearce Ford went into judicial liquidation.
 

 Having terminated its finance plan with the dealer, Associates Discount Corporation declined to pay The Ford Motor Company for the cab and chassis. In keeping with its policy of maintaining dealer transactions on a cash basis, The Ford Motor Company notified Pearce Ford that the cab and chassis would be picked up. On March 30, 1961, the employees of Pearce Ford delivered the certificate of origin and the truck keys to The Ford Motor Company representative. The Ford Motor Company representative then removed the truck from the dealer’s establishment. The truck remained in the possession of The Ford Motor Company until it was sequestered in this proceeding about eight days, later. On June 2, 1961, Plaquemines Equipment bonded the sequestration and the truck was released to it.
 

 The legal issue presented by the instant case is the ownership of the cab and chassis
 
 *206
 
 at the time of the institution of this suit. If plaintiff had title, then its demand should be sustained and the writ of sequestration maintained. If, on the other hand, it did not own the cab and chassis, its demands should be rejected and the writ of sequestration dissolved.
 

 The plaintiff, Plaquemines Equipment, contends that the sale had been perfected and that upon delivery of the cab and chassis to Pearce Ford, title to the equipment immediately vested in it. The plaintiff relies principally upon Articles 2439 and 2456 of the Louisiana Civil Code, LSA.
 

 The Ford Motor Company asserts that the object of the sale was a specially built truck and that the transfer of ownership could not become operative until the truck came into existence in deliverable form. Since the fabrication of the truck was never completed, it contends that the contract remained executory and no title passed to the purchaser.
 

 It is clear that future things may be the object of a sales contract.
 
 [2]
 
 Commercial transactions involving objects to be manufactured or fabricated are quite common. Such a contract is not aleatory, but certain, since the price is to be paid for a specific future object, the production of which depends upon the will of the seller.
 
 [3]
 

 In the absence of an expression of intent to the contrary, such a contract is not immediately translative of the ownership of any property. Title to the future thing cannot pass for it is not yet in existence. Title to the component parts does not vest in the purchaser because they are not the object of the contract.
 

 In the instant case, the object of the contract was a specially built truck to be produced. The agreement of the parties specified in detail the body type and other equipment to be installed on the cab and chassis. The body and other special equipment represented a major factor in the cost.
 

 The dealer surrendered the cab and chassis to The Ford Motor Company without making the installation required to place the truck in deliverable form. It follows that the contract remained executory. It did not ripen into a sale. Title did not pass to the purchaser.
 
 [4]
 

 
 *208
 
 Articles 2439 and 2456 of the Louisiana Civil Code, LSA, provide:
 

 “Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
 

 “Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.” “Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.”
 

 In express terms, Article 2439 requires the concurrence of the thing sold, the price and the consent for the perfection of the contract of sale. If the thing sold has not come into existence, as in the instant case, the concurrence is lacking.
 
 [5]
 

 Article 2456 provides for the vesting of title in the purchaser by operation of the law prior to actual delivery. For the transfer of title to be operative under the Article, the object of the contract must exist in a deliverable state. The law does not presume to pass title to anything other than the object of the contract.
 

 We have considered the several decisions cited by plaintiff, including Searcy v. Gulf Motor Co., La.App., 37 So.2d 445 and Mossy Motors v. McRedmond, La.App., 12 So.2d 719, but find them to be inapplicable to the instant case.
 

 We conclude, as did the Court of Appeal, that the plaintiff, Plaquemines Equipment & Machine Co., Inc., has no title to the property in controversy.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed.
 

 [1]
 

 . 143 So.2d 815.
 

 [2]
 

 . Art. 1887, LSA-Civil Code; Planiol, Traité Élémentaire De Droit Civil (An English Translation by Louisiana State Law Institute) Vol. 2 — Part 1, Nos. 1008, 1368.
 

 [3]
 

 . Arts. 1775, 1776, LSA-Civil Code.
 

 [4]
 

 . Arts. 2439, 2456, LSA-Civil Code. See also George D. Witt Shoe Co. v. J. A. Seegars & Co., 122 La. 145, 47 So. 444; State v. Shields, 110 La. 547, 34 So. 673; Gant v. Palmer, La.App., 10 So.2d 523; Hearon v. Davis, La.App., 8 So.2d 787; Planiol, Traité Élémentaire De Droit Civil (English Translation by the Louisiana State Law Institute) Vol. 1 — Part 2, Nos. 2596, 2597, Vol. 2 — Part 1, Nos. 1008, 1368; Smith, J. Denson, An Analytical Discussion of the Promise of Sale,
 
 *208
 
 20 Louisiana Law Review 522, 540; 46 Am.Jur., Sales, Section 430, pp. 598-599; 77 C.J.S. Sales § 254, pp. 1042-1043.
 

 [5]
 

 . See Gant v. Palmer, La.App., 10 So.2d 523 and Hearon v. Davis, La.App., 8 So.2d 787.