BARNETTE, Judge.
Plaintiffs, the Succession of Albert Schieffler and Sadie Curol Schieffler, brought suit against Belair Trailer Sales, Inc., and Commercial Credit Corporation seeking specific performance of an agreement made under a condition of credit life insurance on the life of the deceased for the sale to him of a certain mobile home, or in the alternative for damages for alleged breach of contract. There was *286 judgment for defendants rejecting plaintiffs’ demands and dismissing the suit. The plaintiffs have appealed.
On October 14, 1965, Albert Schief-fler went to a Belair Trailer Sales lot to purchase a trailer home to replace one which had been lost in Hurricane Betsy. He and his wife made selection of a model and type of mobile home with certain specifications which Belair did not then have in stock. An order was placed with the manufacturer of that particular make and model in Texas for immediate construction and delivery, which was contemplated to require about two weeks. Schieffler signed a buyer’s order specifying the purchase price and terms of credit, etc., and various other papers, including a chattel mortgage and note in blank and the necessary forms for title.
An agreement was reached as to price and terms of payment after some negotiation between Mr. Schieffler and Belair’s representative, John Polizzi. Mr. and Mrs. Schieffler were anxious to keep their monthly payments under $100. This, of course, was possible only if a sufficient cash payment was made to reduce the credit balance to a figure which could be financed accordingly. Another very important condition of the sale was that Mr. Schieffler would have credit life insurance to cover the unpaid portion of the purchase price. Mr. Schieffler very frankly stated his reason for this requirement, namely, that he had a serious heart condition and did not want to have his home encumbered with mortgage in the event of his death before the credit balance was paid in full. He explained that he never made credit purchases or borrowed money except on the condition of credit life insurance.
All of Belair’s credit sales were financed through Commercial Credit Corporation, and there was a well-established business relationship between them. Bel-air was supplied with a schedule of payments on unpaid balances from which it could compute the monthly payments over a given number of years or months, without the delay in contacting Commercial Credit on a specific sales negotiation. The inclusion of a premium for credit life insurance was, however, a matter on which a specific commitment had to be obtained from Commercial Credit. Polizzi, Belair’s representative, telephoned Commercial Credit and obtained the information requested by Schieffler regarding credit life insurance and the amount of premium to be included in the monthly payments on a credit balance of $5,027.60 payable in 84 monthly installments. The total monthly payment was fixed at $100.62 to begin in 45. days. (Mrs. Schieffler contends that the life insurance premiums for the duration of the mortgage (7 years) were paid by the $500 advance payment. This issue will be discussed more fully below.)
The total purchase price of the trailer home was agreed upon at $7,527.60, and the cash payment was to be $2,500, thus leaving $5,027.60 to be financed with the customary chattel mortgage as security.
Mr. Schieffler made a deposit of $100 to apply on the down payment and paid an additional $20 for costs incidental to completion of the sale and chattel mortgage. On October 20 an additional $400 was paid to apply on the purchase price, leaving $2,000 as the balance of the cash payment due to be paid upon delivery of the trailer.
On October 28, Mr. Schieffler died of a heart attack. His widow, Mrs. Schieffler, immediately notified Belair and obtained a certified check for $2,000 payable to Bel-air. Belair refused to accept the $2,000 offered in payment of the balance of the cash portion of the purchase price. At that time the trailer had not been delivered from the manufacturer.
Mrs. Schieffler qualified as administra-trix of Mr. Schieffler’s succession, and in that capacity brought this suit seeking to enforce the sales agreement to compel Belair to accept the $2,000 tendered and to deliver the trailer free of mortgage. She predicates her case upon the contention that the credit life insurance was effective from *287 October 14, or when the additional $400' was paid, therefore claiming that the credit portion of the purchase price, $5,027.60, was extinguished by the proceeds of the insurance. In the alternative she seeks damages in the amount of $7,527.60, in solido, against both defendants.
As indicated above, Mrs. Schieffler contends that the $500 advance payment was for the payment of the life insurance premium and that the insurance was in effect from the date of the payment of that amount. She testified that Polizzi, on October 14 (the date on which the initial deposit of $100 was made), assured her husband in her presence that the insurance was effective from the moment he signed the papers, meaning the buyer’s order form and the other papers mentioned above.
Jim Esposito, president of Belair, testified that hazard insurance is always obtained for protection of all parties in credit sales contracts and that the premium for this insurance in the amount of $633 added to the credit balance of $5,027.60 totalling $5,660.60 would require monthly payments over 84 months of $96.85. The difference between that amount and $100.62 ($3.77) was the monthly premium for the credit life insurance. Furthermore, Samuel W. Holder, district manager for Commercial Credit Corporation, testified that he had no knowledge of credit life insurance premiums ever having been paid in a lump sum. The procedure is to include the cost of such insurance in the total charges, thus making it payable as part of the monthly installments.
The total purchase price of the trailer was $7,527.60. The cash payment to be paid on delivery (including advance payments) was to be $2,500, thus leaving a balance of $5,027.60 to be financed. This is clearly established by the buyer’s order signed by Mr. Schieffler and filed in evidence. This contradicts Mrs. Schieffler’s contention and destroys her basic premise. Obviously, if the advance payment of $500 was for insurance as contended by Mrs. Schieffler, a further payment of $2,000 would have left a credit balance of $5,527.60 rather than $5,027.60.
There is no doubt whatever that the credit life insurance premiums were to have been included in the monthly installments of $100.62 and the $500 advance payment was to apply on the cash portion of the purchase price.
We find no basis whatever for liability of Commercial Credit Corporation. There was no privity of contract between it and Schieffler. There were no negotiations directly between them, and the only promise on the part of Commercial Credit was to Belair to purchase the note for the credit balance, in keeping with their long-established business relationship, upon completion of the sale and the execution of the chattel mortgage. Neither Polizzi nor Be-lair was an agent of Commercial Credit, and plaintiff has failed completely to show any basis for suit against Commercial Credit.
As between Schieffler and Belair there was a contract to sell a trailer to be manufactured according to certain specifications for a predetermined price and upon specific terms of payment and financing. Had Mr. Schieffler lived there is no question that he could have compelled specific performance. LSA-C.C. art. 2462. But as he died before the date for completion of the sale and financing of the credit portion of the purchase price on the terms agreed, including insurance on his life, his succession cannot now compel specific performance. The contract to sell specifically provided for payment of an additional $2,000 upon delivery of the mobile home, a thing to be manufactured according to certain specifications. There was not on October 14, 1965, or at any time before Mr. Schieffler died, a sale immediately translative of ownership of the thing to be manufactured. Plaquemines Equipment & Mach. Co. v. Ford Motor Co., 245 La. 201, 157 So.2d 884 (1963).
At most, if Mr. Schieffler had lived, the defendants were obligated — Belair to *288 Schieffler and Commercial Credit to Bel-air — to complete the contract to sell and finance with credit life insurance on the terms to which the parties had agreed. Upon his death, however, the completion of the contract to sell on those terms became impossible, for there could be no insurance of the life of one already deceased. The demands were properly rejected by the trial court.
The record before us on appeal fails to disclose if the $500 advance payment made by Mr. Schieffler was refunded after his death. However, a joint stipulation by counsel for plaintiffs and defendant Belair with photostatic copy of canceled check answers the question affirmatively and supplies the proof needed on this point.
Accordingly, and for the reasons above, the judgment appealed from is affirmed at appellants’ cost.
Affirmed.