BOLIN, Judge.
On September 17, 1965, David M. Lide, Sr., and Pel-Star Oil Corporation by written instrument leased to E. E. (Jack) Day approximately 450 acres of farmland in Tensas Parish. On the same day, by a separate but similar instrument, Pel-Star leased to Jerry Keith Crane approximately 440 acres in the same parish. These leases were periodically renewed, the final renewals providing they were to remain in effect through December 31, 1974.
In July, 1973, Lide and Pel-Star assigned all the rentals due them under the leases to Lakegrove Plantation. Each lease provided the lessor was to receive from the lessee one-fourth of the cotton produced from the land and the lessee was to receive the remaining three-fourths. Each lease also granted the lessee the right to sell lessor’s one-fourth interest unless the lessor notified the lessee to the contrary in writing, in which event the one-fourth interest would be delivered to the lessor in kind.
*845 From 1965 until 1973 the lessees sold all the harvested crops and remitted the amount due to lessors. In March and June, 1973, for the first time each lessee entered into a “Sale and Purchase Agreement” whereby he attempted to sell the future production of cotton under what is commonly referred to as a “Forward Booking Contract”, to Massony Cotton Company.
In July 1973, Lakegrove Plantation, lessors’ assignee of the cotton rentals under both leases, gave written notice to Crane and Day requesting that the lessors’ rent for 1973 be paid by delivery of the crops in kind. Day and Crane, being faced with conflicting demands, filed these concursus proceedings (later consolidated) and deposited in the registry of the court the warehouse receipts representing the lessors’ one-fourth interest in the cotton.
Following trial on the merits the lower court for written reasons decided Day and Crane sold the lessors’ interest in the cotton crop under the sale and purchase agreements prior to the receipt by them of the written notices advising them that the lessors’ one-fourth interest should be paid in kind. Accordingly, a formal judgment was signed ordering delivery of the cotton receipts to the cotton merchant; that the merchant sell the cotton and pay the proceeds to the lessors or their assigns; and further, rejecting defendants’ reconven-tional demand for damages and cancellation of the leases. Defendants in the con-cursus proceedings appeal. The purchaser of the cotton, Massony Cotton Company, answers the appeal seeking damages under its reconventional demand and asking that the judgment be altered to relieve it from the payment of all costs.
We find the lower court was erroneous in holding lessees had the right to sell lessors’ cotton in the -manner in which they did under the forward booking contract.
The overriding issue, which we think is dispositive of the case, is whether the written lease agreements and sale purchase agreements, without other extrinsic evidence, authorized the lessees to sell the lessors’ portion of the crops where the lessors had given written notice prior to the harvest that they desired to receive their portion of the crops in kind.
Each lease contained the following provision :
“The price and consideration for said lease is:
(a) One-fourth (]4) of the cotton and cottonseed (less only the ginning costs) shall be paid net to lessors each year; Party of the Second Part [lessee] shall pay all expenses in connection with said crops, including fertilizer and poison (but only his proportionate part of the ginning costs); Party of the Second Part is granted the right to sell the cotton and cotton seed to he received by Parties of the First Part [Zeiior-y] as rent as aforesaid, and pay to Parties of the First Part the price received therefor, such sale, however, to be not less than the amount of loan available for said cotton in the event a United States Government loan program shall be in effect; provided, however, that in the event Parties of the First Part wish, for business or tax reasons, to delay the sale of their portion of said cotton they may do so by notifying the Party of the Second Part in writing of their desire to do so, and thereupon the Party of the Second Part shall deliver to Parties of the First Part their one-fourth of the cotton, said cotton to be of average grade and staple.” (Emphasis added)
The Sale and Purchase Agreement was executed by Day on June 6, 1973, and by Crane on March 7, 1973. Each contract was signed by Massony Cotton Company as buyer and contained the following provisions, with the blanks appropriately filled in:
“1. On the terms and conditions and at prices hereinafter stated, the Producer *846 and Seller agrees to sell, and the Buyer agrees to buy, all and only the cotton produced by Producer and Seller during the crop year 1973 on approximately-acres situated in -.
“2. This contract is for the sale and purchase of all cotton produced on the above described acreage eligible for the 197 — ■ Government loan as determined by USDA official Government class except any false-packed, water-packed, re-packed, re-ginned or oily cotton. All cotton eligible under this contract must be hand or spindle picked.
“3. Producer and Seller agrees to practice normal, good farming methods in the production and harvesting of the crop, to defoliate before machine picking and to harvest, gin and store as fast as practicable after maturity. Buyer has the privilege of controlling within reason the amount of heat and cleaning equipment to be used in ginning the cotton. Producer and Seller agrees further to cooperate in harvesting, handling and ginning the cotton to avoid overheating, overmachining and poor preparation.”
It is significant to note that prior to signing the booking contract in March, 1973, Crane presented Massony with a copy of his lease for review. Massony also knew that Day leased his land under a similar contract.
During the course of trial objection was made to the admissibility of evidence tending to show the intent of the parties to the contracts or to in any way enlarge or contradict the written provisions. The objections were referred to the merits and the evidence was admitted subject to the objection. We hold the objections were valid and should have been sustained. The applicable law is Louisiana Civil Code Articles 1901, 1945 et seq., relating to contracts and the rules for their interpretation.
We find no ambiguity in the lease contracts. The fact that the parties referred to “cotton and cottonseed less only the ginning costs” rather than “cotton crops or standing crops” indicates a clear intention that the parties were referring to “harvested cotton”. The fact that each contract contained the word “sale” rather than “contract to sell”, “sale of a future interest” or “sale of standing crops” indicates an intention to authorize a sale of “harvested cotton”.
Even though lessors were not parties to the booking contracts, the provisions of these contracts may be considered in determining the intent of the lessees. These contracts were clearly not a sale of cotton or a sale of a future interest but by their terms “the producer and seller agrees to sell and the buyer agrees to buy”. In order for a contract to constitute a sale the parties must intend that title shall pass immediately; otherwise it will be considered a contract to sell. Plaquemines Equipment & Machine Co., Inc. v. Ford Motor Co., 245 La. 201, 157 So.2d 884 (1963); Smith v. Hussey, 119 La. 32, 43 So. 902 (1907).
 Lessors sought damages from the lessees for failure to deliver one-fourth of the cotton in kind. We find lessors have failed to prove any damages with that degree of certainty required under our law. We likewise find no merit in the claim for cancellation of the leases.
Next for consideration is the answer to the appeal wherein Massony seeks to have the judgment of the lower court amended to relieve it from the payment of all costs.
Louisiana Code of Civil Procedure Article 4659 provides:
“When money has been deposited into the registry of the court by the plaintiff, neither he nor any other party shall be required to pay any of the costs of the proceeding as they accrue, but these shall be deducted from the money on deposit. The court may award the successful claimant judgment for the costs of the proceeding which have been deducted from the money on deposit, or any portion thereof, against any other claimant *847 who contested his right thereto, as in its judgment may be considered equitable.
“In all other instances, the court may render judgment for costs as it considers equitable.”
Appellees m their brief acknowledge the fixing of costs is within the discretion of the court. Since this contest involves cotton warehouse receipts rather than money, there is nothing on deposit in the registry of the court from which the costs may be deducted. We conclude this litigation and the ensuing costs were caused by the neglect, fault, or mistake of plaintiff and Massony, which parties should pay the costs.
For the reasons assigned the judgment of the lower court is affirmed in part and reversed in part and, accordingly, it is now ordered, adjudged and decreed that:
(1) The cotton warehouse receipts m the registry of the lower court be released from registry and the Clerk of the Sixth Judicial District for the Parish of Tensas is hereby specifically directed to deliver same to the order of David M. Lide, Sr., Pel-Star Oil Corporation, and Lakegrove Plantation, a partnership, which parties are recognized as the owners of the cotton for which the receipts were given.
(2) The concursus proceedings filed by plaintiffs Crane and Day were appropriate under the circumstances, and plaintiffs in concursus are hereby relieved of any further liability to defendants in concursus, Massony and its assignees, for the delivery of said warehouse receipts deposited in the registry of the court, as well as delivery of the cotton represented thereby and recon-ventional demands filed against plaintiffs in concursus by all defendants in concursus are rejected.
(3) The demands of the defendants, Lide, Pel-Star, Lutken Brothers, Murchison Brothers and Lakegrove Plantation, for recognition of their right to evict Crane and Day are hereby denied; the rights of plaintiffs in concursus, Crane and Day, to go forward with crop operations on the leased property through the crop year 1974 without disturbance or interference is hereby confirmed, recognized and made the judgment of this court.
(4) The warehouse receipts which are the subject hereof are identified and set forth in detail as shown in Part VII of the judgment of the lower court dated May 22, 1974.
It is further ordered that E. E. (Jack) Day and Jerry Keith Crane are cast in so-lido for one-half of the costs of these proceedings and Succession of Frank A. Mas-sony d/b/a Massony Cotton Company is cast for the remaining costs.