LOTTINGER, Judge.
This is a suit for declaratory judgment. Mr. and Mrs. Ronald G. Wolf and Mr. and Mrs. Woodall J. Didier seek a judgment declaring their titles to immovable property in East Baton Rouge Parish valid and unassailable vis-a-vis Ronald L. Whitney and other defendants named herein.[1] Whitney answered with a general denial and reconvened, asking to be recognized as the owner of an undivided one-half interest in the subject properties.[2] From judgment in favor of plaintiffs, on the main demand, and dismissing the reconventional demand,[3] defendant Ronald L. Whitney has filed a sus-pensive appeal.
FACTS
The real properties in the instant controversy devolved to the plaintiffs as follows:
On January 21,1979, a partnership agreement was signed by Ronald L. Whitney, Edwin B. McKnight, and Steve T. Simo-neaux, forming a partnership known as “Whitney, Simoneaux & McKnight.” The partnership agreement was filed and duly recorded with the Clerk and Recorder for East Baton Rouge Parish on January 22, 1971.
On January 27,1971, James P. Golden, Jr. executed four acts of sale with assumption of mortgage, transferring lots 55, 61, 62 and 63 of University Park Subdivision to the partnership.
On May 7, 1971, Home Savings & Loan Association sold to Ronald Whitney, Edwin McKnight, and Steve Simoneaux lot 64 of University Park Subdivision.
On November 24, 1971, Steve T. Simo-neaux transferred to Ronald Whitney his 33V3 percent interest in the partnership. On April 2, 1973, Whitney transferred to Edwin McKnight a part of his interest in the partnership, resulting in each having a fifty percent interest therein.
On March 15, 1974, Ronald L. Whitney and Edwin McKnight executed an instrument wherein Whitney allegedly transferred to McKnight his interest in the partnership. The instrument provided:
“For one dollar & other consideration I, Ronald L. Whitney transfer my 50% interest in the partnership of Whitney & McKnight to Edwin McKnight. The property in question is recorded in the record books of East Baton Rouge Parish, Louisiana as Original 99, Bundle 7486, Original 1, Bundle 7487, Original 3, Bundle 7487, Original 5, Bundle 7487 & Original 93, Bundle 7584.”
*302 The recordations cited above refer to the following described property now in the hands of the plaintiffs: Lots 55, 61, 62, 63 and 64 of University Park Subdivision of East Baton Rouge Parish. The transfer of fifty percent interest in the partnership from Whitney to McKnight was filed with the Clerk and Recorder for East Baton Rouge Parish on August 15, 1978.
Subsequently, on February 1, 1979, Edwin McKnight sold lots 61 and 62 of University Park Subdivision to James H. Kidd and Peggy Langlois Kidd who, on May 17, 1979, transferred the same lots to Mr. and Mrs. Woodall J. Didier, plaintiffs herein.
On February 5, 1979, Edwin McKnight sold lots 55, 63, and 64 of University Park Subdivision to WCS Partnership, which at that time had as partners Ronald G. Wolf, I. Randolph Creel, Jr., Richard L. Creel, and Ernest Cleveland Slayton, Jr. Subsequently, Ronald G. Wolf, on behalf of his wife and himself, acquired his partners’ interest in WCS Partnership, and Wolf and his wife are plaintiffs herein.
TRIAL COURT
On the basis of the above-mentioned documents, plaintiffs asked the court to declare their titles to the lots in University Park Subdivision to be valid and unassailable visa-vis the defendants. Whitney claimed in reconvention that the transfer of his partnership interest was “a fraud” and that no consideration was paid therefor.
The trial court found that the instrument transferring Whitney’s partnership interest to McKnight was sufficient to transfer title to real estate, and that “one dollar and other valuable consideration” was a sufficient consideration. On this basis, the trial court rendered judgment for plaintiffs and dismissed the reconventional and third-party demands.
SPECIFICATIONS OF ERRORS
Defendant-appellant Ronald L. Whitney does not assign precise specifications of errors, but argues generally that the trial court erred in finding the instrument which purportedly transferred his fifty percent interest in the partnership to McKnight was a valid and non-voidable transfer of title of the lots in University Park Subdivision.
The issues involved herein can be summarized as follows:
1) Did the transfer of fifty percent interest in the partnership from Whitney to McKnight pass title to the subject real estate?
2) Was such transfer valid?
I
Complicating the issue of the sufficiency of the transfer document is the fact that title to four of the five lots now in the hands of plaintiffs was taken in the name of the partnership “Whitney, Simoneaux, & McKnight.” Under Louisiana jurisprudence, a partnership is a separate entity distinct from its partners, and the partners are only owners of the residuum which may be left, following dissolution, after partnership debts have been discharged. See Johnson v. Johnson, 235 La. 226, 103 So.2d 263 (1958); and Trappey v. Lumberman’s Mutual Casualty Company, 229 La. 632, 86 So.2d 515 (1956) and cases cited therein.
As such, the partnership itself held title to all real estate composing partnership property. Of the real properties involved herein, title to lots 55, 61, 62 and 63 of University Park Subdivision was taken in the name of the partnership. Title to lot 64 was taken in the names of individual partners. Nonetheless, the transfer of fifty percent interest from Whitney to McKnight refers to specific properties owned by the partnership by citing where same are recorded. The transfer document refers to Original 93, Bundle 7584, and the document recorded therein is the sale of lot 64, with the names of the partners appearing as vendees. Apparently Whitney and McKnight considered lot 64 as partnership property. We therefore presume that all of the lots involved herein were owned by the partnership at the time of the transfer of fifty percent interest from Whitney to McKnight.
*303 Prior to the revision of the Civil Code Articles pertaining to partnerships,[4] the Louisiana jurisprudence was split as to whether the withdrawal of a partner terminated the partnership. See discussion in Edco Properties v. Landry, 371 So.2d 1367, 1372-1374 (La.App. 3rd Cir.1979); writ den. 375 So.2d 945 (La.1979). If the partnership was so dissolved, McKnight would take ownership of all property of the partnership after satisfying partnership debts.
Yet, even assuming arguendo that Whitney’s withdrawal did not dissolve the partnership,[5] the fact remains that McKnight was the sole remaining partner; thus, he could sell immovable property on behalf of the partnership on his own volition. Therefore, the fact that Edwin McKnight was named as the vendor of property which was owned by the partnership is of no consequence, if the transfer of partnership interest was valid.
A transfer of partnership interest is not a sale of specific property of the partnership or an interest therein, Posner v. Little Pine Lumber Co., 157 La. 73, 102 So. 16 (1924); Shalett v. Brownell-Kidd Company, 153 So.2d 425 (La.App. 1st Cir.1963); writ ref. 244 La. 1004, 156 So.2d 57 (1963). Thus, a transfer of fifty percent interest in the partnership was not a sale of the partnership’s immovable property. However, for a partnership to own immovable property, its articles must be put into writing and recorded, see former La.Civ.Code art. 2836. Additionally, contracts of partnership involving lands and other immovables cannot be proved by parol evidence, Gantt v. Gantt, 6 La.Ann. 677 (1851), Walsh v. Texada’s Syndic 7 Mart. (N.S.) 231 (1828). We therefore are of the opinion that for the sale of an interest in a partnership which owns immovables to be upheld as valid, the sale must meet those requisites of form which apply to sales of immovable property. We find the following articles of the Civil Code applicable:
“Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.
“Art. 2440. All sales of immovable property shall be made by authentic act or under private signature.
“Except as provided in article 2275, every verbal sale immovables shall be null, as well as for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.
“Art. 2240. All acts may be executed under private signature, except such as positive laws have ordained to be passed in presence of a notary.
“Art. 2241. It is not necessary that those acts be written by the contracting parties, provided they be signed by them.
“Art. 2242. As act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act.”
The transfer document is a writing executed before two witnesses and signed by McKnight and Whitney on March 15, 1974. On February 25, 1980, Diana Drost, a witness to the act of transfer, appeared before *304 an ex-officio notary public and acknowledged witnessing the signing of the instrument by Whitney and McKnight. Additionally, both Whitney and McKnight stipulated the authenticity of their signatures. Thus, the transfer document was sufficient in form as a transfer of interest in a partnership owning immovable property. The question which remains, however, is whether the transfer was valid or can be voided by Ronald Whitney.
II
Whitney alleged in his pleadings that he never intended to divest himself of his partnership interest. Answers to interrogatories, which were filed in the suit record, indicated that McKnight told Whitney that a transfer on paper was necessary for McKnight's protection because Whitney was having marital difficulties. The answers to interrogatories also stated that McKnight promised Whitney that the transfer document would not be recorded in the public records, and that when asked about the transfer document, McKnight told Whitney it had been destroyed or lost. For these reasons, Whitney alleges and contends that the transfer was “a fraud” and that the consideration recited in the transfer document evidences this and affects third parties accordingly, citing Hearon v. Davis, 8 So.2d 787 (La.App. 2nd Cir.1942).
Whitney maintains that the sale must fall because of failure of consideration, and that the recited consideration of “one dollar and other valuable consideration” was of such a nature to alert plaintiffs that a defect existed in the chain of title. What Whitney apparently argues is that the purported sale of partnership interest is a simulation, which is a pretended or feigned sale clothed with the formalities of a valid sale. In ascertaining whether a sale is simulated, the courts must determine whether the parties acted in good faith, whether there was an actual intention to transfer title, and whether any consideration was given for the transfer. Phillips v. Nereaux, 357 So.2d 813 (La.App. 1st Cir. 1978), and on denial of rehearing, 361 So.2d 228 (La.App. 1st Cir.1978).
Whitney’s version of the circumstances surrounding the transfer would militate against a good-faith intention by the parties to transfer partnership interest. We note, however, that although Edwin McKnight was present at trial, Whitney did not call him to testify in his defense. Inasmuch as the burden of proving a simulation rests with the party whom alleges it, the fact that Whitney did not call his supposed participant in simulation to testify creates a presumption that McKnight would have given testimony contrary to that of Whitney. See Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 (1953); Morgan v. Matlack, Inc., 366 So.2d 1071 (La.App. 1st Cir.1979); writ den. 369 So.2d 1352 (La.1979).
Whitney also admitted on cross-examination that in response to a phone call from plaintiffs’ counsel, he had originally maintained that his signature on the transfer document was forged. At trial, the signatures on the transfer were stipulated authentic. This prior inconsistent statement reflects poorly on the veracity of Whitney, and his failure to call McKnight to testify militates against Whitney’s version of circumstances surrounding the transfer.
The record further indicates that on the same day of the transfer, March 15, 1974, McKnight wrote a check for $1,920.00, payable to the order of Ron Whitney, and Whitney admitted that this check was given to him. Whitney contends that this amount was loaned to him by McKnight so that he could keep his car from being repossessed. However, the record reflects no attempt by Whitney to pay either principal or interest on the amount loaned to him, nor is there any existing memorialization of the purported loan. Whitney testified that he had not repaid McKnight because he could never find him; however, the record indicates that Whitney knew McKnight’s home address and phone number at all times pertinent hereto. The trial judge was apparently of the opinion that the check for $1,920.00 given by McKnight to Whitney on March 15, 1974, was a part of the “other valuable consideration” for the transfer of *305 partnership interest, and under the facts demonstrated in the record, we agree with this conclusion. Apparently Whitney had not only marital problems at the time but also financial problems, and we are of the opinion that McKnight gave Whitney, in exchange for Whitney’s share in the partnership, the amount Whitney needed to keep his immediate creditors at bay. A transaction will not be set aside as a simulation if any consideration, no matter how small, supports the transaction, because the reality of the transfer is thus established. Russell v. Culpepper, 344 So.2d 1372 (La.1977); Hysmith v. Coleson, 421 So.2d 402 (La.App. 1st Cir.1982). Of course, as additional consideration, McKnight assumed all outstanding liabilities of the partnership. We find that the act under private signature which purported a transfer of fifty percent interest in the partnership has not been proven a simulation by Whitney. For this reason, plaintiffs are entitled to judgment declaring their titles to properties in University Park Subdivision valid and unassailable vis-a-vis Ronald Whitney, Edwin McKnight, and James Kidd.
DECREE
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of plaintiff on the main demand, and dismissing the reconventional demand and all incidental demands is hereby affirmed. All costs, both in this court and in the trial court, are assessed to defendant-appellant Ronald L. Whitney.
AFFIRMED.

. The Wolfs obtained their property from WCS partnership, which in turn purchased from Edwin McKnight, named as a party defendant. The Didiers named Edwin McKnight and James J. Kidd, who bought some of the subject property from McKnight and sold it to the Didiers, as parties defendant, their claim against Kidd being a call in warranty. „

. Whitney’s reconventional demand was filed not only against plaintiffs, but also against McKnight and Kidd. Kidd filed third party demands against McKnight for breach of warranty and against Whitney, in subrogation of the rights of McKnight against Whitney.

.The trial court held that the recoventional demand could not be brought in response to a suit for declaratory judgment. The incidental demands mentioned in Footnote 2, supra, were also dismissed. These rulings are not at issue on appeal.

. Book III, Title XI of the Louisiana Civil Code of 1870, “Of Partnership,” has been revised by Acts 1980, No. 150, effective January 1, 1981.

. The revision of the codal provisions on partnership produced a new La.Civ.Code art. 2826, which provides in part that a partnership is terminated by the reduction of its membership to one person. Moreover, Article 2826, as amended by Act 797 of 1981, applies to all partnerships existing on the effective date of the amendment (September 11, 1981). Thus, even assuming that the partnership was not dissolved by Whitney’s selling his fifty percent interest to McKnight, the effectuation of new Article 2826 would have terminated the partnership as of the effective date of the amendment. In such case, under the doctrine of “after-acquired title,” plaintiffs would be entitled to judgment, if the transfer of partnership interest was valid.