CULPEPPER, Judge.
This is a concursus proceeding. The plaintiff, Standard Life Insurance Company of the South, deposited in the Registry of the Court the sum of $39,568.46, representing benefits due under a life insurance policy issued by plaintiff on the life of Raymond Andrew Dahlquist, who is now deceased. Cited as adverse claimants to the funds on deposit are: (1) Mrs. Carolyn Boyles Dahlquist, former wife of the deceased insured; (2) Mrs. Margaret Dahlquist Franks and Dr. W. L. Dahlquist, as administrators of the succession of Raymond Andrew Dahlquist; and (3) James Ray Franks, as tutor of the minor, Raymond Andrew Dahlquist, Jr. The district judge found that Mrs. Carolyn Boyles Dahlquist is the primary beneficiary under the policy and is entitled to the entire sum on deposit, less certain costs. The other named claimants appealed.
*367 The issues on appeal are: (1) Under the language of the policy, is Mrs. Carolyn Boyles Dahlquist named as sole primary beneficiary, or does the language include ah children born of the marriage as additional primary beneficiaries? (2) Did the community property settlement between Mrs. Carolyn Boyles Dahlquist and the deceased insured have the effect of changing the beneficiary under the policy or renouncing her rights as beneficiary?
GENERAL FACTS
The facts show that on June 18, 1964, plaintiff issued a standard life insurance policy to Raymond Andrew Dahlquist as owner, insuring his life for the sum of $25,000 and providing double indemnity in case of accidental death. On the face of the policy, the beneficiary is stated to be “CAROLYN BOYLES DAHLQUIST, WIFE, AND AS SHOWN .ON THE APPLICATION.” The pertinent portion of the application is as follows:
[[Image here]]
At the time the policy was issued in 1964, the deceased was married to Carolyn Boyles Dahlquist, and they had two minor children. The principal purpose of the policy was to pay any balance due on a mortgage on the family home in the event of the death of Mr. Dahlquist. The policy was assigned to the holder of the mortgage note to the extent necessary to pay the balance, the remaining benefits to go to the beneficiary.
On May 12, 1969, the insured and his wife were judicially separated from bed and board and custody of the children was granted to Mr. Dahlquist. On January 6, 1970, judgment of final divorce was rendered and permanent custody of the two children was granted to Mr. Dahlquist.
On June 6, 1970, the insured and one of the children died by accidental drowning. No change in the beneficiaries under the policy was ever made. After payment of the $10,431.54 balance on the mortgage, the remaining $39,568.46 is the sum in dispute.
ARE THE CHILDREN INCLUDED AS PRIMARY BENEFICIARIES ?
Where the name of the beneficiary of an insurance policy is not clear, the intention of the insured is the controlling consideration, Continental Insurance Company v. Madonia, 205 La. 823, 18 So.2d 310 (1944) and the authorities cited therein.
The agent who sold the policy testified he explained to Mr. Dahlquist the difference between primary and contingent beneficiaries, and that the application and policy as written reflect the intention of the insured. After objection, the witness was not allowed by the court to state what that intention was.
We must first look to the language of the policy and the application to determine the *368 intent of the insured. The photo copy of the pertinent portion of the application, supra, shows that under 9. (a) Carolyn Boyles Dahlquist is clearly designated in the space provided for the primary beneficiary. The words “all children born of the marriage, share and share alike” are written by hand starting in the space provided for designation of the primary beneficiary and ending in the space provided for the contingent beneficiary.
The appellants argue first that this location on the application indicates the children are intended to be primary beneficiaries. We cannot agree. The children are not designated in the space provided for primary beneficiaries. It appears to us that the intention was to designate the children in the space provided for contingent beneficiaries. An argument supporting this construction is that if the children are not contingent beneficiaries, then no such beneficiaries are named in the policy.
The appellants contend next that in the portion of the application providing for primary beneficiaries, brief instructions are given in case the beneficiary is a minor, and the children are shown immediately following these instructions. The answer to this contention is that the designation of the children starts immediately after these instructions but continues in the space provided for contingent beneficiaries. Furthermore, the dates of birth of the children are not given, as is requested in the case of primary beneficiaries.
Finally, the appellants argue that since only one blank space is reserved for designating the primary beneficiary, and the name of the wife takes up this entire space, it was necessary to improvise. They say this is the reason the children are not designated in the space reserved for primary beneficiaries. We cannot agree. If it was the intention of the insured to list his children as primary beneficiaries, this could have been made clear by placing these same words in the space provided for designation of primary beneficiaries, or it could have been done on a separate piece of paper.
Additionally, it is noted that the face of the policy shows only the name of the wife as beneficiary. If it was the intention of Mr. Dahlquist to name his children as additional primary beneficiaries, he could have done so on the face of the policy. We conclude the language of the policy itself supports the construction that Mrs. Carolyn Boyles Dahlquist is the sole primary beneficiary.
The surrounding circumstances also strongly corroborate such an intention. At the time the policy was issued in 1964, there were no marital difficulties between Mr. and Mrs. Dahlquist. It is reasonable that Mr. Dahlquist intended his wife to be the primary beneficiary of all funds remaining after payment of the mortgage on the home, in order that she might use these funds for the maintenance and support of herself and the minor children. It is unlikely that Mr. Dahlquist anticipated marital difficulties or that on his death his wife would not have custody of the children.
We conclude that Carolyn Boyles Dahl-quist is the sole primary beneficiary of the policy.
THE COMMUNITY PROPERTY SETTLEMENT
Following the divorce on January 6, 1970, the insured and his former wife entered into a community property settlement by which she received $1,000 in cash and certain items of household furniture, in consideration of which she conveyed to Mr. Dahlquist all of her interest in two vehicles and the family home. Additionally, she conveyed to him “any and all other community property located in the State of Louisiana not specifically described herein.” There is no specific mention of insurance policies.
The parties agree that under the community property settlement Mrs. Dahlquist conveyed to her former husband all interest *369 which she had in the ownership of the policy, including the premiums which had been paid, the cash surrender value, etc. The issue is whether she also lost her rights as beneficiary.
The first question is whether the property settlement had the effect of changing the beneficiary. The policy provides as follows:
“Change of Beneficiary — While the Insured is living, the Owner may change the Beneficiary from time to time by written notice in form satisfactory to the Company. No such change will take effect unless recorded by the Company at its Home Office. However, upon being so recorded, any such change will take effect as of the date the notice was signed, whether or not the Insured is living when the change is recorded, subject to any payment made or other action taken by the Company before such recording.”
In the present case, there was no attempt by the owner of the policy to change the beneficiary in accordance with the procedure specified in the policy.
LSA-R.S. 22:643 provides clearly that the insurer is discharged by payment in accordance with the terms of the policy. Likewise our jurisprudence holds that where a life insurance policy provides an exclusive method for changing the beneficiary, the procedure must be followed. Giuffria v. Metropolitan Life Insurance Company, 188 La. 837, 178 So. 368 (1938); American National Life Insurance Company v. Ramon, 208 So.2d 392 (La.App., 4th Cir. 1968); 46 C.J.S. Verbo Insurance § 1175c(2), pp. 75-82. There may be exceptions to this rule where there is substantial compliance with the procedure, or where the insurer has waived compliance, etc., but no such contentions are at issue here.
Appellants contend the above quoted portion of the policy provides for change of beneficiary even after the death of the insured, and that in the present case the beneficiary was changed when the administrators of the estate of Mr. Dahlquist filed their answer in this concursus proceeding contending that the community property settlement constituted a change of beneficiary. A reading of the provisions in question show their purpose is to recognize a change of beneficiary by the owner wheré the insured dies after the notice of change is signed, but before it reaches the company. These provisions have no application here, where no such notice was ever signed by the owner of the policy.
We conclude there has been no change of the beneficiary, and the insurer had the right to pay the proceeds to Mrs. Carolyn Boyles Dahlquist. However, the funds have now been deposited in the court and we must decide which of the claimants is entitled to them.
Appellants contend that although there was no formal change of beneficiary in accordance with the provisions of the policy, Mrs. Dahlquist has, under the community property settlement, effectively renounced or assigned her rights as beneficiary. They quote portions of 44 Am.Jur.2d, Verbo Insurance Section 1740, at page 651, as follows:
“The rights of the beneficiary to the proceeds of a policy upon the life of a divorced spouse may be terminated in any of the following ways: by an agreement of the parties, which may be reasonably construed as a relinquishment of the spouse’s rights to the insurance; by the wife’s release of her interest in the husband’s life insurance policies made in a property settlement in their divorce action, even though the husband had failed to change the designation of the wife as beneficiary;”
Our Civil Code expressly provides for the sale of a future thing, LSA-C.C. Article 2450, as well as the sale of a hope, LSA-C.C. Article 2451. See Springs Thunder Agency, Inc. v. Odom Insurance Agency, Inc., 237 So.2d 96 (La.App., 1st Cir. 1970); *370 and Plaquemines Equipment & Machine Company v. Ford Motor Company, 245 La. 201, 157 So.2d 884 (1963). Under these authorities it is clear that the beneficiary in the present case had the right to assign or renounce the hope or expectancy that on the death of the insured she would receive the proceeds of the policy.
The Code establishes a limitation on the right to contract with reference to future expectancies in the case of successions, LSA-C.C. Article 1887. Planiol, An English Translation By The Louisiana State Law Institute, Vol. II, Part I, No. 1012— 1016, explains the source and rationale of the rule which prohibits contracts on future successions: “They were considered (in Roman law) as immoral because the parties speculated on the death of a living person who was ordinarily one of their relatives, and in addition, as dangerous because they could engender in the minds of parties the thought of crime to hasten its commission. Those motives are extremely feeble.” Planiol then gives several exceptions which are made to the rule.
We find no Louisiana statute limiting the right of the beneficiary of a life insurance policy to assign or renounce his rights. Perhaps it could be argued by analogy that the rights of such a beneficiary and the rights of an heir or legatee to a succession are so similar that the prohibition stated in LSA-C.C. Article 1887 should apply. Nevertheless, we agree with the observation by Planiol, supra, that the motives for the rule are feeble. Actually, any life insurance policy could be said to engender in the mind of the beneficiary the thought of crime to hasten receipt of the proceeds. We see no reason to extend by analogy the rule prohibiting contracts on future successions to the rights of beneficiaries under life insurance policies.
Having decided that the beneficiary could renounce or assign her hope of receiving the proceeds of the policy, the next question Is whether she did so in the community property settlement. As stated above, the agreement does not specifically mention insurance policies. However, it concludes with the provision that the wife conveys to the husband “any and all other community property located in the State of Louisiana not specifically described herein.”
The applicable rules for the interpretation of agreements are succinctly stated in Crow v. Monsell, 200 So.2d 700 (La.App. 2d Cir. 1967), writ refused 251 La. 226, 203 So.2d 558, as follows:
“A cardinal rule for the interpretation of contracts is that courts must seek for and ascertain, if possible, the mutual intention of the parties. LSA-C.C. Art. 1945; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940); Chicago Mill & Lumber Co. v. Lewis (La.App.) 68 So.2d 913 (2d Cir. 1953—cert. denied). Although language employed in contracts is usually interpreted according to the ordinary and customary meaning of the words used, clauses couched in general terms, which, if taken literally, would lead to unreasonable consequences must be construed according to what, under all circumstances, was probably the intention of the parties, Losecco v. Gregory, 108 La. 648, 32 So. 985 (1901); Molero v. California Company (La.App.) 145 So. 2d 602 (4th Cir. 1962—cert. denied). Where the words of a contract are susceptible of more than one meaning, courts must give them the interpretation that carries out the object and purpose of the contract. Robbert v. Equitable Life Assur. Soc., 217 La. 325, 46 So.2d 286 (1950).”
In the present case it is obvious that the words of the contract are not clear and explicit as to whether the wife renounced her rights as beneficiary under the policy. Hence, we must examine the contract as a whole and all of the surrounding circumstances to determine what was probably the intention of the parties. We ultimately conclude it was the mutual intent that the wife renounce all of her rights as beneficiary under the policy.
*371 The circumstances which support this interpretation are as follows: The agreement was signed after the final divorce on January 6, 1970, and after the husband had obtained custody of the two children. It is illogical to conclude that Mr. Dahl-quist intended his divorced wife to receive the large sum of money represented by the proceeds of his insurance, particularly where she did not have custody of the two children. Also, the principal purpose of the insurance was to pay the mortgage on the home, and in the agreement he received the home. Furthermore, the wife was leaving everything, husband, home and children. Except for the sum of $1,000 and the few items of household furnishings which she received in the community property settlement, she probably intended to renounce her right to all community assets, including any benefits from insurance policies on which the community had paid premiums. Of course, it may be that the parties and the attorney who drew the agreement simply overlooked the insurance policy. However, the intent and purpose of the catch-all clause was that the wife divest herself of any community assets not mentioned. We think this intent and purpose included the benefits of the life insurance policy.
An examination of cases from other states shows generally that each was decided under the laws of the particular state and the circumstances of the case. For instance, Brewer v. Brewer, 239 Ark. 614, 390 S.W.2d 630 (1965) supports the position of the appellants. In the community property settlement in that case the divorced wife expressly transferred and released any and all interest in certain specifically described insurance policies. The decision mentions that the property settlement was approved by the court and incorporated in a final divorce decree. The court held the wife was foreclosed from claiming as beneficiary the proceeds of the policy, even though she was still named beneficiary at the time of the husband’s death. In support of its decision, the court relied on jurisprudence in the State of Arkansas that insurance beneficiaries may be changed by will, the analogy being that in the case under consideration the community property settlement was a later expression by the insured than the designation of the beneficiary made at the time the policy was issued. The court also relied on the rule that a contract is strictly construed against the party preparing it, in that case the agreement having been prepared by the wife’s attornney.
Prudential Insurance Company of America v. Broadhurst, 157 Cal.App.2d 375, 321 P.2d 75 (1958) reaches a contrary result. That case holds that under California law the interest of a beneficiary, where the insured has the right to change the beneficiary, is a mere expectancy of a gift at the time of the insured’s death. And, although such a beneficiary may assign or renounce such an expectancy, this cannot be done in general terms but must be done expressly. The court fortified its holding by stating that since the insured had more than a year after his divorce and before his death to change the beneficiary but did not do so, and since the evidence showed he was aware of the fact that his wife remained the beneficiary, his intent was probably to leave the beneficiary unchanged.
Since Mrs. Carolyn Boyles Dahlquist has renounced her rights as beneficiary, the proceds must, under the express provisions of the policy, be paid to the contingent beneficiaries who survive the insured. As stated above, the contingent beneficiaries are “all children born of the marriage, share and share alike.” There were two children, and only one survived the insured. Hence the sole remaining beneficiary is the minor, Raymond Andrew Dahlquist, Jr.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that the funds on deposit, less the costs of the trial and appellate courts, be paid to James Ray Franks, as tutor of the minor, Raymond Andrew Dahlquist, Jr.
Reversed and rendered.