669 So.2d 1181 (1996)
John R. CONTOIS, Jr. as Representative of the Estate of John R. Contois, Sr.
v.
Marilyn Morris CONTOIS.
No. 95-C-0794.
Supreme Court of Louisiana.
March 8, 1996.
Michael Francis Kelly, Marksville, for Applicant.
Russell Joseph Stutes, Jr., Baton Rouge, Scofield, Gerard, Veron, Singletary & Poherelsky, Lake Charles, for Respondent.
*1182 JOHNSON, Justice.[*]
John R. Contois, Sr., and Marilyn Morris Contois were married for several years during which time the couple had three children, Charles Remi Contois, Christopher John Contois, and Lynn Contois.[1] While married to Marilyn Contois, on January 1, 1985, John R. Contois, Sr. became a City Court Judge in Marksville, Louisiana and on that date he became a member of the Louisiana State Employees Retirement System (LASERS). As part of his enrollment with LASERS, Judge Contois executed a registration form designating Marilyn Morris Contois as his beneficiary in the event of his death before retirement.
The registration form appears in pertinent part as follows:

On April 18, 1986, Judge Contois and Marilyn Contois obtained a judgment of legal separation. Thereafter, on August 5, 1987, they executed a voluntary partition of the community of acquets and gains. The partition agreement provides in pertinent part as follows:
The parties hereto do hereby further effect a division of the existence of their community of acquets and gains as follows:
1. MARILYN MORRIS CONTOIS hereby receives, and JOHN ROBERT CONTOIS hereby grants, bargains, relinquishes, sells, conveys, releases with complete transfer and subrogation of all rights and actions of any interest, rights and ownership that she may have in and to the State of Louisiana retirement plan in the name of MARILYN MORRIS CONTOIS.
2. JOHN ROBERT CONTOIS hereby received, and MARILYN MORRIS CONTOIS hereby grants, bargains, relinquishes, sells conveys, releases with complete transfer and subrogation or all rights and actions of any interest, rights and owership (sic) that he may have in a retreiment (sic) plan in the name of JOHN ROBERT CONTOIS, as City Judge of the City of Marksville, Avoyelles Parish, Louisiana.
On June 22, 1991, Judge Contois died without having executed a LASERS change of beneficiary form. At the time of his death, Judge Contois was married to Vickie Sayer Contois and was not in state service. Subsequently, LASERS paid Judge Contois' contributions totalling $19,893.60 to Marilyn Contois as the named beneficiary. Based on the language in the community property partition agreement, the representative of the estate of Judge Contois, John Robert Contois, Jr., filed the present action against Marilyn Contois to recover the funds paid by LASERS.
The trial judge rendered judgment in favor of Marilyn Contois finding that the benefits paid before eligibility for retirement under the LASERS plan were similar to death benefits in a life insurance policy. The trial judge concluded that the "community property settlement made John Contois the owner of the retirement plan. As owner of the *1183 plan, he had the right to designate whomever he wished to receive the funds he had contributed in the event of his death before retirement, including the right to leave the designated beneficiary unchanged." (emphasis in original).
The court of appeal reversed[2] quoting the following from Standard Life Ins. Co. v. Franks, 260 So.2d 365, 369-370 (La.App. 3d Cir.1972):
Our Civil Code expressly provides for the sale of a future thing, LSA-C.C. Article 2450, as well as the sale of a hope, LSA-C.C. Article 2451. See Springs Thunder Agency, Inc. v. Odom Insurance Agency, Inc., 237 So.2d 96 (La.App. 1st Cir.1970); and Plaquemines Equipment & Machine Company v. Ford Motor Company, 245 La. 201, 157 So.2d 884 (La.1963). Under these authorities it is clear that the beneficiary in the present case had the right to assign or renounce the hope or expectancy that on the death of the insured she would receive the proceeds of the policy.
The Code establishes a limitation on the right to contract with reference to future expectancies in the case of successions, LSA-C.C. Article 1887. Planiol, An English Translation By The Louisiana State Law Institute, Vol, II, Part I, No. 1012-1016, explains the source and rationale of the rule which prohibits contracts on future successions: `They were considered (in Roman law) as immoral because the parties speculated on the death of a living person who was ordinarily one of their relatives, and in addition, as dangerous because they could engender in the minds of parties the thought of crime to hasten its commission. Those motives are extremely feeble.' Planiol then gives several exceptions which are made to the rule.
We find no Louisiana statute limiting the right of the beneficiary of a life insurance policy to assign or renounce his rights. Perhaps it could be argued by analogy that the rights of such a beneficiary and the rights of an heir or legatee to a succession are so similar that the prohibition stated in LSA-C.C. Article 1887 should apply. Nevertheless, we agree with the observation by Planiol, supra, that the motives for the rule are feeble. Actually, any life insurance policy could be said to engender in the mind of the beneficiary the thought of crime to hasten receipt of the proceeds. We see no reason to extend by analogy the rule prohibiting contacts on future successions to the rights of beneficiaries under life insurance policies.
The court of appeal noted without further discussion that its decision in Standard Life was reversed by this court "on other grounds." Standard Life Ins. Co v. Franks, 278 So.2d 112 (La.1973). Applying the quoted precepts to the present case, the court of appeal determined that the language in the community property settlement could only be interpreted as Marilyn Contois conveying all rights she had in the pension plan, including any hope or expectancy that on Judge Contois' death she would receive the contributions he made to the plan. We granted writs to review the correctness of this decision.[3]
In Standard Life, the husband procured a life insurance policy which provided a face amount of $25,000.00 with double indemnity in case of accidental death. The wife was the designated beneficiary and the policy was assigned to the mortgagee to the extent necessary to pay the balance of the mortgage. Thereafter, the husband and wife were judicially separated and entered into a community property settlement which contained a catch-all phrase transferring "[a]ny and all other community property located in the State of Louisiana not specifically described herein" to the husband. The couple divorced, but the husband never changed the named beneficiary. Upon the husband's death, a dispute arose over the proceeds to the policy. The trial judge awarded the proceeds to the wife. The court of appeal reversed and awarded the proceeds to the contingent beneficiaries finding that, although there was no specific mention of the policy in the partition agreement, the wife not only conveyed her ownership interest in the policy, but she also renounced her hope of receiving the proceeds as a beneficiary. Standard Life, 260 So.2d 365 (La.App. 3d Cir. 1972). On review, this court reversed the court of appeal distinguishing between the insurance policy and the death benefits payable *1184 thereunder and held in favor of the divorced wife as the named beneficiary. Standard Life, 278 So.2d 112 (La.1973). This court stated
The death benefits of the life insurance policy were never community property, for there was a named beneficiary other than the estate of the insured. Death benefits payable to one other than the estate are not part of the community of acquets and gains, and they were not here made a part of that community through the settlement agreement. We need only examine the contract of insurance, therefore, to determine to whom are due the funds on deposit. The contract of insurance contained a provision for change of beneficiary. The deceased did not exercise the right to change the beneficiary. We need not inquire into whether he desired to change the beneficiary, for we are bound by the unambiguous contract which names the beneficiary. It is true that the policy of insurance, as opposed to the death benefits under the policy, was transferred in the community settlement. The deceased was in fact vested with all rights and obligations under the policy of insurance. He owned the policy, but not the death benefits. Insofar as the death benefits were concerned, he retained only the contractual right to change the beneficiary.
Id. 278 So.2d at 114. (emphasis in original). Since the death benefits were not community property, this court held that the wife did not transfer or renounce them when she transferred any and all community property to the husband. Id.
Like our analysis in Standard Life, we must examine the community property partition agreement to determine what was transferred. In the first paragraph referencing a retirement plan, Mrs. Contois "receives" and Judge Contois "grants ... all rights and actions of any interest, rights and ownership that she may have in and to the State of Louisiana retirement plan in the name of Marilyn Morris Contois." (emphasis added). This paragraph refers to a plan in Mrs. Contois' name which is not included in the record and does not apply to the LASERS plan in Judge Contois' name. In the second paragraph of the agreement referencing a retirement plan, Judge Contois "received" and Mrs. Contois granted "all rights and actions of any interest, rights and owership (sic) that he may have in a retirement plan" in his name as a City Judge. (emphasis added). This paragraph does not specifically refer to a LASERS plan, but it is clear that the plan at issue is a LASERS plan. Moreover, in this paragraph, Mrs. Contois transferred any interest "he," that is, Judge Contois, had in a retirement plan in his name. This paragraph does not provide that it transfers any interest that "she" might have in the plan. Although the language in the agreement is unclear, the parties agree that, at the very least, through this transfer, Judge Contois became owner of the plan. That is, Judge Contois became owner of the lifetime contributions made to the plan which were earned during the existence of the community. Through the community property partition agreement, Mrs. Contois transferred her community interest in these contributions. However, Mrs. Contois' ability to receive the refund of contributions as a beneficiary did not arise from the community, but from Judge Contois designating her as beneficiary. Accordingly, the community property partition agreement did not affect Mrs. Contois' rights as the designated beneficiary. As owner of the plan, Judge Contois had the contractual right to change the beneficiary designation or to leave the designated beneficiary unchanged.
Through the community property partition agreement, the plan and the community property contributions to the extent receivable became the separate property of Judge Contois. As owner of the plan and as a member who had withdrawn from state service, Judge Contois could have applied for and obtained a refund of the amount of his accumulated contributions credited to him. La.R.S. 11:537. Under these circumstances, if Judge Contois had elected to withdraw his contributions, such funds would have been his separate property. However, Judge Contois did not withdraw the contributions in the plan and died before becoming eligible for retirement.[4] La.R.S. 11:558. Therefore, *1185 pursuant to the plan, the named beneficiary or estate was entitled to receive a refund or return of the member's accumulated lifetime contributions. La.R.S. 11:445. We need only examine the relevant plan documents to determine to whom the funds are due.
The LASERS' member registration form executed by Judge Contois names Marilyn Contois as the designated beneficiary. The parties stipulated that Judge Contois could have changed the designated beneficiary by using a form provided by LASERS. There is no evidence that Judge Contois changed the designated beneficiary. Therefore, as the named beneficiary, Marilyn Contois is entitled to the refund of contributions which the plan has already paid to her.

DECREE
For the foregoing reasons, the judgment of the court of appeal reversing the trial court's judgment in favor of Marilyn Contois is hereby reversed and the judgment of the trial court finding that the contributions were properly paid to Marilyn Contois as designated beneficiary is hereby reinstated.
NOTES
[*] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis.

Calogero, C.J. not on panel. Rule IV, § 3.
[1] The birth dates of the children are as follows: Charles Remi Contois July 27, 1976; Christopher John Contois November 19, 1979; and Lynn Contois November 22, 1984. At the time of Judge Contois' death, the children were minors with Marilyn Contois retaining custody.
[2] 94-270 (La.App. 3 Cir. 12/7/94), 649 So.2d 750.
[3] 95-0794 (La. 5/12/95), 654 So.2d 340.
[4] At the time of his death, Judge Contois was not in state service and he had he had only 6 years of creditable service. Therefore, no survivor benefits were due the minor children or the surviving wife. La.R.S. 11:471 et seq. and La.R.S. 11:562.