334 So.2d 453 (1976)
Robert JOHNSON, Jr.
v.
COLONIAL BUICK, INC.
No. 7271.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1976.
*454 Frank S. Bruno, New Orleans, for plaintiff-appellant.
Edwin A. Stoutz, Jr., New Orleans, for defendant-appellee.
Before REDMANN, LEMMON, GULOTTA, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff brought suit for the return of $500 he deposited with defendant in connection with the purchase of a new automobile. Defendant answered and reconvened for damages allegedly resulting from plaintiff's failure to accept the car. From a judgment dismissing plaintiff's suit and defendant's reconventional demand only plaintiff has appealed.
Plaintiff ordered the car on October 3, 1973, and he filled out and signed an order form contract. Conspicuous on the form was the statement, "TO BE DELIVERED ON OR ABOUT ____, 19.", but no date was inserted on the form. On October 4 plaintiff made his deposit. The automobile was delivered to defendant by the manufacturer between January 15 and 20, 1974. In the meantime, plaintiff's attorney notified defendant on January 10 that the order was canceled and a formal demand was made on defendant for a return of the deposit.
Plaintiff testified that defendant's salesman who took his order, Eugene Turk, promised delivery in six weeks. Plaintiff contends that he was planning a vacation for December 1 and ordered the car with the understanding that it would be ready at that time.
Turk testified that he did not promise delivery by any particular date but admitted that plaintiff was anxious to have the car for his vacation and that he told plaintiff the car would be ready in "eight weeks or better."
The trial judge in his reasons for judgment stated that he "was unimpressed" with plaintiff's testimony. Even accepting defendant's evidence as true, however, we are unable to agree with the trial court's judgment.
Reasons given by defendant for the delay in delivery were twofold; first, because special paint and a special landau top on the car delayed its manufacture and, second, the General Motors factory employees took their vacations during the last two weeks of December. These considerations explained the delay and were surely beyond the control of defendant, but the uncontradicted testimony of defendant's *455 witnesses was to the effect that none of these delays were anticipated by defendant when the agreement was made. On the contrary, the "eight weeks or better" statement encompassed the probability of some delay due to the special paint job but defendant had no reason to anticipate further delays because of the landau top or the vacations.
The question is whether by January 10, 1974, plaintiff was at liberty to withdraw from his contract pursuant to LSAC.C. Art. 2485. Since no time was agreed upon a reasonable time for delivery was implied. H. T. Cottam & Co. v. Moises, 149 La. 305, 88 So. 916 (1921). As of January 10, 1974, when plaintiff canceled the sale fourteen weeks had passed since the order was placed so that the issue becomes whether this constituted a reasonable time.
Surely, the determination of reasonableness requires a consideration of what the parties intended when the agreement was made. The trial judge observed: "The plaintiff is an individual of intelligence and was aware or should have been aware that delivery by Thanksgiving was highly unlikely, if not a near impossibility."
In the first place, we do not find any evidence in the record to support this finding. Turk's testimony was that he promised delivery in "eight weeks or better." Thanksgiving day was exactly eight weeks after the order was placed, so that even defendant considered eight weeks a possibility. But we are not concerned with a mere delay of eight weeks but one of fourteen weeks. The trial judge found this to be a reasonable delay because of the special features ordered by plaintiff and the fact that the factory employees went on vacation at the year's end, but the evidence shows that neither party anticipated these delays when the contract was signed. Therefore, there could be no meeting of the minds between plaintiff and defendant to the effect that the time for delivery would involve these delays so that fourteen weeks would be a reasonable time.
If we may disregard the intention of the parties at the time the contract was made in determining the reasonableness of the time for delivery it would follow that a seller could hold a buyer to a contract to purchase for an indefinite length of time if the seller could show only that the delays were outside of his control. We cannot conclude that the law in general, and C.C. Art. 2485 in particular, is susceptible to this construction. Yet the effect of the trial court's decision was exactly that because when plaintiff canceled the contract on January 10 he knew no more about the anticipated date of delivery than he had on November 29, eight weeks after the contract was made, or on December 29 when he returned from his vacation, some twelve weeks after the contract was made.
Accordingly, the judgment of the trial court is reversed and there is judgment in favor of plaintiff, Robert Johnson, Jr., and against defendant, Colonial Buick, Inc., in the sum of $500, with legal interest from June 18, 1974, until paid and for all costs.
REVERSED AND RENDERED.
BOUTALL, J., dissents with written reasons.
BOUTALL, Judge (dissenting).
This is a suit for return of a deposit made in connection with the purchase of an automobile to be delivered at a later time. The majority opinion would reverse the trial court and order the deposit returned. I respectfully dissent for the following reasons:
The suit was based on two main issues:
First, plaintiff contended that there was an oral contract between him and Colonial Buick that the automobile would be delivered by December 1, 1973, and that he was induced into signing the order form agreement *456 by fraudulent assertions of the defendants' salesman that the car would be delivered by that time. The purchase order form states on its face "TO BE DELIVERED ON OR ABOUT _____, 19" plainly to be seen at the top of the document. The space for date is left blank.
The evidence adduced on delivery time is the testimony of the plaintiff (with some degree of support from his mother and a friend who accompanied him on later visits) as opposed to the testimony of the salesman and the sales manager of Colonial Buick. There is no need to detail all of this testimony with specificity, suffice it to say that the issue presented is one of credibility of the witnesses and the weight to be assessed to the testimony of each. It is apparent that the trial judge, in his written reasons for judgment, resolved this conflict in testimony in favor of the defendants, holding that the court was not persuaded by the testimony that the plaintiff had orally specified a required date of delivery, and that it was unimpressed by the testimony of the plaintiff.
Upon a finding of no specified time of delivery, the court then considered the second issue: what was a reasonable time for delivery? It is axiomatic that when there is no specified time of delivery in a contract of sale, the time of delivery must be considered to be a reasonable time. In my opinion, the determination of reasonable time is based upon the conditions and facts that affect delivery and not the state of mind of a party to the contract. If state of mind alone is controlling, then there should be a finding of specified time for delivery.
In this case the order was placed October 3, 1973, and the vehicle was not ready for delivery until January 12, 1974. The record discloses that the regular expected delivery time of a vehicle ordered on this date would be six to eight weeks. However, it is equally abundantly clear in the record that whenever a vehicle is ordered which requires special attention or special equipment other than that ordinarily included, some lengthier period of time is involved. On this vehicle, a Riviera twodoor sport Coupe, with a suggested retail price of $5,305.05, the amount of extras ordered added up to a total list price of $8,272.05. Particularly, there are three extras found by the trial judge which caused most of the delay: (a) a special color paint which is not the standard color on the Riviera and which required specially made rubber components to get a color match; (b) a custom landau roof which required the vehicle to be shipped to another location for installation; and (c) a special custom leather interior that delayed the manufacturing process several days.
It is explained that to obtain the special paint job required, the vehicle had to be removed from the regular assembly line, and indeed, before it began to be assembled it was necessary that special matching parts be ordered in order to be installed for a color match. It is only after these parts are specially ordered and delivered to the assembly line that the vehicle can be placed into production. Then it must be removed and the special paint job applied. Additionally the vehicle must also be specially handled to install the special leather interior. Thereafter, the vehicle would normally have been shipped to the sales dealership. It is noted that some several extra days of delay occurred because the timing of the order coincided with the beginning of the model year.
In any event all of the extras were placed on the vehicle by December 17, at which time it was required to be sent to another location for installation of the landau roof. That period happened to coincide with the annual Christmas vacation customary in the automotive manufacturing business in general, and the particular roof installer, which lasts for approximately a two weeks period until after the first of January. The roof was then immediately installed and shipped back to the Buick division and then to the New Orleans dealer.
*457 Considering the numerous special features, and the intricacies of installing them on a particular vehicle, and the season of the year involved, I agree with the trial judge that the delay in delivery was not an unreasonable delay. Accordingly, when the purchaser refused to accept delivery, he was in violation of the agreement between the parties.
Although both parties have urged upon us several legal theories as to how we should treat the $500.00 deposit made in connection with the purchase order, the written document regulates the rights of the parties concerning the deposit made. The contract specifically provides that the "deposit may be retained as liquidated damages". I would affirm the judgment of the trial court.