355 So.2d 1019 (1978)
LOU-ARK EQUIPMENT RENTALS CO., INC.
v.
HONG AH FONG, Hong Au Fong, Hong Kar Fong, Hong May Fong, Yew Bong Fong, a/k/a Larry Fong, Individually and as Curator for the minor, Jeong Fong, a/k/a Jone Fong, the National Bank of Commerce in Jefferson Parish, A. L. Warriner and J. K. Builders, Inc.
Alfred L. WARRINER, Jr.
v.
HONG AH FONG, Hong Au Fong, Hong Kar Fong, Hong May Fong, Yew Bong Fong, a/k/a Larry Fong, Individually and as Curator for the minor, Joeng Fong, a/k/a Jone Fong and J. K. Builders, Inc.
Nos. 8690 and 8691.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
As Amended and Recast on Denial of Rehearing March 14, 1978.
Writ Refused May 5, 1978.
*1020 Greenberg & Dallam, Nathan Greenberg, Roger I. Dallam, Gretna, for plaintiff-appellant.
Roy L. Price, Metairie, for defendants-appellees.
Before BOUTALL, SCHOTT and GARSAUD, JJ.
GARSAUD, Judge.
These consolidated cases arose out of an agreement for pile driving in conjunction with the construction of the Canton Restaurant in Metairie, Louisiana.
In the Lou-Ark Equipment Rentals Co. case (hereinafter Lou-Ark), Lou-Ark filed suit against an array of defendants to recover the cost of rental of a crane used to drive pilings on the construction site. The defendants sued were A. L. Warriner, the individual who arranged for and used the crane, J. K. Builders, Inc., the general contractor on the job, The National Bank of Commerce in Jefferson Parish, the interim financier, and the Fongs, owners of the property. Lou-Ark obtained a default judgment against defendant Warriner, but on a trial on the merits had its claim dismissed as to the other defendants. This decision was appealed in case No. 8690.
Case No. 8691 was brought by A. L. Warriner as plaintiff against J. K. Builders, Inc. and the Fongs. This action was to recover an amount due for the value of plaintiff's services as supervisor of the pile driving, as well as the balance due for the value of services of plaintiff's crew. In addition, plaintiff sued for the balance due on the Lou-Ark crane rental for which judgment has been rendered against him. The trial court found an agreement between Warriner and J. K. Builders for pile driving in the amount of $21,500.00. The trial court also found that Warriner failed to carry his burden of proof relative to additional compensation and amounts due and owing. Case No. 8691 is an appeal from that judgment.
This rather complicated case can be reduced to four main issues:
(1) Whether A. L. Warriner transacted expressly or impliedly for J. K. Builders the agreement for rental of the crane from Lou-Ark;
(2) Whether an agreement existed between A. L. Warriner and J. K. Builders for pile driving;
(3) If an agreement did exist, what were its terms;
(4) If an agreement did exist, was A. L. Warriner fully compensated thereunder?
With regard to the first issue, it is clear from the evidence that Warriner was not expressly appointed a mandatary by J. K. Builders for any purpose, including the rental of the crane from Lou-Ark. No mandate ensued under Article 2985 of the Civil Code. Neither, however, did any other form of mandate arise. It is well recognized that in spite of the fact the Louisiana Civil Code does not provide for nonrepresentative agency, Pascal, A Report on the French Civil Code Revision Project, 25 Tul.L.Rev. 205, 213 and Comment, Agency Power in Louisiana, 40 Tul.L.Rev. 110, Louisiana courts have been compelled to develop an apparent authority concept for protection of innocent third parties. Such protection, though, does not, under these circumstances, extend to the plaintiff, Lou-Ark. *1021 When this principle is invoked it must be shown ". . . (1) that the principal make manifestations to a third party in some form, and (2) that the third party reasonably rely on the agent's purported authority as a result of the manifestations of the principal." Krautkramer Ultrasonics, Inc. v. Port Allen Marine Service, Inc., 248 So.2d 336 (La.App. 4th Cir. 1971). When the Civil Code precludes any but a representative agency, it is logical that a rule for the protection of third parties require some indication to the third party by the principal of a recognition of the mandatary. Here there was no such manifestation or indication from J. K. Builders to Lou-Ark which might have pointed to Warriner's authority to act in the former's behalf. In fact, there was absolutely no communication between J. K. Builders and Lou-Ark. Mr. Autin, president of Lou-Ark, admitted in his testimony that he never contacted anyone at J. K. Builders in connection with this equipment lease. Autin apparently assumed that Warriner had authority to bind J. K. Builders, and, as a result, he never made any inquiries into that relationship. The only information that Lou-Ark sought was concerning J. K. Builders' financial status. Autin testified that he knew Warriner and would not rent the crane to him because he knew of Warriner's financial instability. Thus, he called Mr. Clarence Wegmann, vice president of National Bank of Commerce in Jefferson, only to verify that NBC was handling the interim financing for J. K. Builders on the Canton Restaurant job. On the strength of that verification he agreed to rent the crane.
Although Warriner represented himself as an agent with authority to enter this contract on behalf of J. K. Builders, it is a well-established rule that the declarations and representations of an alleged or reputed agent are not admissible evidence to prove the fact of his agency against the principal. Patrick v. Patrick, 230 So.2d 759 (La.App. 2d Cir. 1970); DeRouen v. Aiavolasiti, 121 So.2d 851 (Orl.App.1960). Further,
"it is also well settled that whoever deals with an agent is put on his guard and it is his duty to inquire into and ascertain the nature and extent of power of the agent. He is required to determine whether or not the contract about to be consummated comes within the agency and will or will not bind the principal."
(Numerous citations omitted.)

Builders Center, Inc. v. Smith, 228 So.2d 245, 249 (La.App. 1st Cir. 1969).
We must conclude then that Warriner was acting individually, on his own behalf as a subcontractor and Lou-Ark's claim is limited to that defendant. The judgment in No. 8690 is affirmed.
In regard to the second case in consolidation, the trial court's findings on the contract and terms thereof are somewhat unclear. After discussing in his oral reasons an "upset" price of $21,500, the trial judge concluded, nevertheless, that the parties agreed on a set price of $21,500. He awarded no amount, however, to Warriner, even though J. K. Builders expended only $20,128.15 on the job. For the reasons stated below, we find this result manifestly erroneous and modify the judgment.
There is really little doubt that some agreement was struck between the parties, and neither disputes its existence. The requisite obligations were created. C.C. Arts. 1761, 1779. The terms of the agreement are not as easily established.
Plaintiff Warriner testified that he considered his arrangement with Jerry Kelly in the nature of a "joint-venture" wherein any savings under $21,500 would be divided equally. On numerous occasions, Warriner asserted that he was to beat the price of $21,500. (T. Vol. II, pp. 86, 95, 96, 119) Warriner would supply his own equipment and Kelly would advance funds for labor, material, and rental of other needed equipment. Kelly was to provide the pilings. (T. Vol. II, pp. 86, 95) Warriner would contribute the value of his own services, expecting to be compensated by splitting the profits. It should be noted here that no such joint-venture is alleged in any of Warriner's pleadings.
*1022 Kelly testified that the amount involved under the arrangement was in excess of $21,000 or $21,500, finally settling on $21,500, and that Warriner was to beat the price. (T. Vol. II, p. 140; T. Vol. III, p. 93) He confirmed that he was to purchase the piling, but denied he was responsible for any other costs related to the driving of piles.
Considering this evidence, it is our view that a contract existed for an upset price of $21,500, and an agreement to split profits, if any. Through their respective testimony, the parties have established a like-mindedness on these terms and have consented thereto. C.C. Art. 1798; see also Litvinoff, 6 Louisiana Law Treatise, Obligations § 129. Their relationship was one of general contractor to subcontractor, with all attendant obligations. (See judgment in No. 8690, supra.)
One area of conflicting testimony on the terms of the agreement, however, relates to the driving of certain thirty-foot pilings. Both parties agreed that Warriner was to drive the 102 sixty-foot pilings called for. Warriner contends that was the extent of the agreement. Kelly maintains that 67 thirty-foot pilings were included. The trial court found there was a preponderance of evidence supporting Kelly's view, and included the thirty-foot pilings. We conclude that there was no manifest error in this regard and accept that finding. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976).
Having reached that conclusion, it is now necessary to determine what amounts, if any, are due and owing to Warriner from J. K. Builders.
The total cost of the pile driving project, irrespective of sources of payment, was:

 Delta Creosoting Co.[1] $11,126.60
 L. B. Foster & Co. 2,915.36
 Lou-Ark 4,673.50
 Labor 1,850.00
 563.00
 Jefferson Rentals 230.58
 Point Landing Fuel Corp. 22.11
 Johnny Tursich
 (driving 30' pilings) 1,983.50
 _________
 TOTAL $23,364.65

Thus, since the total cost of the job exceeded the upset price of $21,500, there was no profit made on the job to be divided between the parties. However, this does not end the inquiry. When calculating the source of payments we find:

 J. K. KELLY WARRINER
 (non-reimbursed
 items)
Delta Creosoting $11,126.60 Rental of
L. B. Foster & Co. 2,915.36 crane $2,673.50
Labor advances 1,850.00 Labor 563.00
 _________
Jefferson Rentals 230.58 TOTAL $3,236.50
Point Landing Fuel
 Corp. 22.11
Johnny Tursich
(30' pilings) 1,983.50
Lou-Ark (crane
rental paid on
garnishment 2,000.00
 __________
TOTAL $20,128.15

It should be noted that Kelly's actual expenses and Warriner's non-reimbursed items amount to $23,364.65, the total cost of the job outlined above.
Under the agreement, Kelly clearly bound himself for all costs of the job to the upper limit of $21,500, regardless of whether or not Kelly specifically approved of each cost outlay. Clearly, Kelly anticipated paying for the normal and usual costs of pile driving as they were incurred by Warriner. The total cost of the job was greater than *1023 $21,500, therefore Kelly must cover the expenses only up to $21,500, the upset price. Since Kelly has expended $20,128.15 to date, he owes the difference, or $1,371.85 ($21,500.00  $20,128.15 = $1,371.85).
This result is consistent with an analysis of the absorption of the upset price overrun by Warriner, and the relative division of out-of-pocket payments. Warriner expended or is liable for $3,236.50 for which he is entitled to reimbursement only up to that figure less the amount of the project over the upset price, computed as follows:

Cost $23,364.65
Upset price 21,500.00
 __________
Cost overrun $ 1,864.65
Warriner's
unreimbursed
items $3,236.50
Cost overrun
absorption by
Warriner 1,864.65
 _________
Due Warriner $1,371.85

The judgment appealed from, therefore, is modified to reflect the amount of $1,371.85 owed to Warriner from J. K. Builders, Inc., consisting of the difference between the "upset" price of $21,500.00 and the out-of-pocket expenses previously paid by Kelly.
AFFIRMED IN PART, REVERSED AND AMENDED IN PART.

ON APPLICATION FOR REHEARING AND/OR TO AMEND DECREE
PER CURIAM.
In his application for rehearing and/or to amend decree, Alfred L. Warriner, Jr. calls our attention to the fact that the decree awards judgment to Alfred L. Warriner, Jr. in the sum of $1,371.85 without making any provision therein for legal interest from the date of judicial demand until paid and for all costs of court. After consideration of this point, it is manifest that our decree must be amended to include legal interest from date of judicial demand until paid and for all costs of court.
Accordingly, the final paragraph of our opinion in this matter dated February 14, 1978 is amended and recast as follows:
"The judgment appealed from, therefore, is modified to reflect the amount of $1,371.85 owed to Warriner by J. K. Builders, Inc. plus legal interest from date of judicial demand until paid and for all costs of court. This amount consists of the difference between the `upset' price of $21,500 and the out-of-pocket expenses previously paid by Kelly."
In all other respects, the various applications for rehearing are denied.
JUDGMENT OF THIS COURT AMENDED AND RECAST; REHEARING DENIED.
NOTES
[1] It was Kelly's testimony (T. Vol. II, p. 142) that he issued two checks to Delta Creosoting for the sixty-foot pilings, one check for $9,126.60, and the second for $2,000, whereas the invoices from Delta Creosoting (Exhibits Lou-Ark 10A through 10E) actually total $11,352.60. This results in a discrepancy of $226.00, which cannot be explained. Kelly's checks to Delta Creosoting are not in evidence, but since there is no dispute raised as to this amount, we will accept Kelly's testimony and assume that Delta Creosoting was underpaid to the extent of $226.00.