JASPER E. JONES, Judge.
Sherry Keahey, appellant, instituted this suit against Osborne Ford-Lincoln-Mercury, Inc., defendant, seeking return of the purchase price of a replica 1955 Ford Thunderbird and damages. Appellant appeals the judgment below rejecting her demand for return of the purchase price and damages, but ordering defendant to return appellant’s deposit.[1] Defendant neither appealed nor answered the appeal.
The assignments of error made by the parties present two issues for decision:[2]
THE FACTS
Appellant, upon seeing an advertisement for a newly manufactured replica of a 1955 Ford Thunderbird, contacted defendant about the possibility of ordering the vehicle. The 1955 replica was to be manufactured by the Model A & Model T Motor Car Reproduction Corporation (Model A & Model T) of Detroit, Michigan. Appellant desired to order the car through defendant because she had done business with it since 1973 and was pleased with their business relationship. She purchased a 1978 Lincoln Town Car from the defendant. This car was specially ordered by her and there was a delay of six to eight weeks before it was delivered to her on December 2, 1977. After placing a deposit of $2,000.00 with the defendant on the 1955 Thunderbird replica and before she was required to pay for it, she bought from defendant a 1981 Ford Escort on June 10, 1981. These vehicles were purchased by her from Clayton Cox, the defendant’s general sales manager, and the plaintiff also ordered her 1955 Thunderbird replica from Clayton Cox.
During appellant’s initial discussion with Clayton Cox in the fall of 1980, she was informed that defendant had ordered a vehicle from Model A & Model T about six months earlier and paid a $500.00 deposit, but the car had not been received nor had the deposit been returned. Appellant was further informed that defendant had made, through their attorney, a demand against Model A & Model T for return of their deposit. This information did not deter appellant from insisting upon trying to buy the car. Mr. Cox testified that appellant told him that if he would order the car for her the defendant would not be out a dime. Mr. Osborne, president and sole stockholder of the defendant, testified that at a later time appellant made a similar statement to him. Appellant denied making either statement.
In January, 1981, appellant met with Mr. Cox and ordered a “super deluxe” replica 1955 Thunderbird. Delivery was to occur in approximately six months, or in June, 1981. The order form was supplied by Model A & Model T and listed defendant as the participating dealer. Appellant’s name does not appear on the order form. Mr. Cox testified that the vehicle was ordered in defendant’s name because Model A & Model T refused to fill an order in an individual’s name. Mr. Cox further testified that defendant received no profit on *184 this order and the 10% dealer discount was to be passed on to appellant. Contemporaneous with filling out the order form, appellant issued her check to defendant in the sum of $2,000.00 as a deposit with the understanding that it would be applied to the purchase price of the vehicle.[3]
In early June, 1981, defendant informed appellant that delivery would be delayed because Model A & Model T was having problems with the leather interior and transmission linkage. In October, 1981, Mr. Cox informed appellant that Model A & Model T required payment in full prior to delivery of the vehicle. Mr. Cox testified that he advised appellant not to send the full purchase price prior to delivery, but appellant insisted. The purchase price of the vehicle, as evidenced by the invoice from Model A & Model T, was $17,110.52. This figure includes a $600.00 freight charge and reflects a deposit of $1,000.00 which defendant sent to Model A & Model T in August. On October 16, 1981, defendant sent its check in the sum of $16,110.52 for the balance to Model A & Model T. On November 16, 1981, appellant delivered to the defendant her check payable to the defendant in the sum of $17,905.25. Therefore, appellant paid defendant $2,794.72 (this included her initial $2,000.00 deposit) more than defendant paid Model A & Model T. The difference, according to Mr. Cox, was due to certain other charges which are as follows:
sales taxes $ 94Y.25
license & title 15.00
continental kit (including freight & installation) 1,120.00
dealer prep 500.00
Total $2,582.25.[4]
Despite repeated requests for the vehicle by appellant to defendant, and by defendant to Model A & Model T, the vehicle was never delivered. On or about March 31, 1982, appellant was informed by Mr. Cox that defendant had received notice that Model A & Model T had instituted bankruptcy proceedings. Defendant was listed as the creditor of Model A & Model T in these proceedings.
Appellant sued defendant demanding delivery of the vehicle or a refund of the purchase price, plus interest.
The trial court made the following factual findings:
(1) that the parties entered into a contract of mandate and not a contract of sale;
(2) Mr. Cox specifically informed appellant of the prior dealings with Model A & Model T and of the pending litigation;
(3) appellant acknowledged that the owner of defendant told her that any loss on this transaction would be at her risk; and
(4) appellant told Mr. Cox that defendant would never be out one dime on the transaction.
The trial court rendered judgment for defendant holding that it was appellant’s mandatary and not liable for return of the purchase price or delivery of the automobile. The trial court ordered defendant to return appellant’s deposit over and above the sums mailed to Model A & Model T, with legal interest from the date of judicial demand.
ISSUE # — TYPE OF CONTRACT
Appellant contends the trial court erred in finding that the parties had entered into a contract of mandate rather than a contract of sale. Appellant argues that the finding of mandate in this case is erroneous because:
(1) there was no express agreement giving defendant the power to purchase an automobile as agent for appellant;
(2) all of the evidence of an implied mandate (which is still insufficient to establish a mandate for the purchase of *185 property) is in the form of declarations and representations of the purported agent and thus, inadmissible, and
(3) the remaining evidence establishes a contract of sale.
Appellant testified that she wanted to buy the Thunderbird from the defendant because she had done business with it for a long time and had been well treated by the defendant. She was a satisfied customer of Osborne. Appellant contends she is entitled to return of the purchase price plus interest because of defendant’s non-delivery of the automobile.
Defendant contends the trial court’s factual finding that the parties entered into a contract of mandate is entitled to great weight on appeal and should not be disturbed absent manifest error. Defendant points out that Mr. Cox informed appellant of the trouble it had with Model A & Model T in a similar transaction and of the pending litigation. Defendant also points out that it did not make any profit on this transaction. Alternatively defendant contends:
(1) that if a contract of sale existed, appellant assumed the risk of non-delivery;
(2) production of the automobile was a suspensive condition which was not fulfilled and therefore, its contractual obligation was discharged;
(3) if the parties to a contract of sale agree that the goods are to be manufactured by one manufacturer, the buyer implicitly assumes the risk of the manufacturer’s non-performance.
APPLICABLE LAW
The factual findings of the trial judge are entitled to great weight and will not be disturbed on appellate review absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262, writ den., 374 So.2d 660 (1979). An agency relationship may be created by the parties thereto either expressly or by implication. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Ward v. Pennington, 434 So.2d 1131 (La. App. 1st Cir.1983), writ denied, 438 So.2d 572 and 438 So.2d 576 (La.1983).[5] An agency is created expressly by the written or oral agreement between the parties. AAA Tire & Export v. Big Chief Truck, 385 So.2d 426 (La.App. 1st Cir.1980). However, a mandate must be express and special when it relates to selling or buying property. LSA-C.C. art. 2997;[6] Ward v. Pennington, supra.
Further, the party claiming to have acted as an agent bears the burden of proof at trial to show his special status. Marmedic, Inc. v. International Ship Management & Agency Services, Inc., 425 So.2d 878 (La. App. 4th Cir.1983). The declarations and representations of the reputed agent are not admissible to prove the fact of his agency against the principal. Patrick v. Patrick, 230 So.2d 759 (La.App. 2d Cir. 1970); Livingston Roofing Co., Inc. v. Katz, 393 So.2d 395 (La.App. 1st Cir.1980); Lou-Ark Equipment Rentals Co., Inc. v. Hong Ah Fong, 355 So.2d 1019 (La.App. 4th Cir.1978), writ denied, 357 So.2d 1167 (La.1978).
The order form for the vehicle sent to Model A & Model T listed defendant as the participating dealer and did not contain the name of appellant. The invoice received by the defendant from Model A & Model T stated “sold to Osborne Ford. ” Defendant issued its check to pay Model A & Model T for the vehicle. This payment for the vehicle was made by defendant three weeks before it collected the purchase price from appellant. Defendant was to participate in the manufacture of the vehicle once it arrived from Model A & *186 Model T. See Plaquemines Equipment & Machine Co. Inc. v. The Ford Motor Co., 157 So.2d 884 (La.1963) where a truck received from Ford Motor Company was found not completely manufactured until ordered extras were added by the dealer. Defendant was to line up the fenders, doors, shocks, front end and generally provide the “finishing up” of the manufacture of the vehicle for the price and consideration of $500.00. Defendant was to acquire a Continental Kit from another source and install it upon the vehicle and do the necessary painting, all for a price of approximately $1,120.00. All of these factors are compatible with defendant acquiring the vehicle as owner, and preparing it for resale rather than acts of an agent. Although the defendant denies it had made profit in the transaction there would seem to be some profit in the $500.00 prep charge, the $1,120.00 installation of the Continental Kit and the now declared $212.48 overcharge. All of these circumstances when considered with appellant's testimony, tend to establish a sale. These facts clearly show that defendant was not acting as appellant's agent, but as a seller, in this transaction. The trial judge was, therefore, clearly wrong in finding that defendant was the agent of appellant.
LSA-C.C. art. 2439 provides:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.”
In express terms, Article 2439 requires the concurrence of the thing sold, the price and the consent for the perfection of the contract of sale. If the thing sold has not come into existence, as in the instant case, one element is lacking and there is no sale. Gant v. Palmer, 10 So.2d 523 (La.App. 1st Cir.1942); Hearon v. Davis, 8 So.2d 787 (La.App. 2d Cir.1942).
In Plaquemines Equipment & Machine Co. Inc. v. The Ford Motor Co., supra, our supreme court held that a contract for a specially built truck to be produced was not a sale, but the sale of a future thing under LSA-C.C. art. 1887.[7]
The court, at p. 885 stated:
“Commercial transactions involving objects to be manufactured or fabricated are quiet common ...”
“In the absence of expression of intent to the contrary, such a contract is not immediately translative of the ownership of any property. Title to the future thing cannot pass for it is not yet in existence. Title to the component parts does not vest in the purchaser because they are not the object of the contract.”
In the instant case, appellant and defendant entered into a contract for the sale of a future thing. Title did not pass to appellant because the car was never built. The risk of loss remained with defendant and appellant is entitled to a return of the purchase price. Plaquemines Equipment & Machine Co., Inc. v. The Ford Motor Co., supra; Rabb & Rainey Iron Works v. LeBlanc, 86 So.2d 513 (La.1956); Johnson v. Colonial Buick, Inc., 334 So.2d 453 (La.App. 4th Cir.1976); LSA-C.C. arts. 2485[8] & 2497.[9]
Defendant contends, however, that appellant assumed the risk of non-delivery after she was apprised of the trouble defendant *187 had with Model A & Model T in the past. The trial court found that appellant told Mr. Cox that defendant would not be out one dime on this transaction.
There is no evidence in the record to remotely support this contention other than the self-serving testimony of Cox, car salesman, and Osborne, defendant owner, which was elicited from them in an attempt to prove mandate. We find defendant’s contention that appellant assumed the risk of non-delivery to be an attempt to hold appellant responsible for the price of the vehicle as a principal. As we have pointed out, the testimony of the reputed agent is not admissible to prove the fact of agency as against the principal. Patrick v. Patrick, supra; Livingston Roofing Co., Inc. v. Katz, supra; Lou-Ark Equipment Rentals Co., Inc. v. Hong Ah Fong, supra. Evidence of this quality cannot overcome the documents of record which establish that the defendant ordered th car in its name, was invoiced for it, and paid for it. This evidence cannot make the defendant suddenly into an agent of appellant when it had been a seller of two vehicles to the appellant who desired to retain that relationship because it had been satisfactory. She was entitled to rely upon this past relationship remaining unchanged. Further, defendant cites no Louisiana jurisprudence or statutory authority in support of its contention that appellant should be held to assume the risk of non-delivery. For these reasons, the trial court was manifestly wrong in finding that appellant assumed the risk of non-delivery.
DAMAGES
Appellant contends that she is entitled to recover $19,905.25, the purchase price, and $3,115.63 which represents interest paid to Tensas State Bank where appellant acquired the purchase price.
Appellant is entitled to recover $19,-905.25 and interest at 12 percent per an-num from the date this debt became due. LSA-C.C. art. 1938; Fidelity Deposit Co. of Maryland v. Cloy Construction Co., et al, 425 So.2d 887 (La.App. 1st Cir.1983). This debt became due on June 25, 1982, when appellant placed defendant in default for non-delivery.
For the foregoing reasons, the judgment appealed is REVERSED AND SET ASIDE and there is judgment herein in favor of Sherry Keahey and against Osborne Ford-Lincoln-Mercury, Inc. in the full sum of NINETEEN THOUSAND NINE HUNDRED FIVE AND 25/100 ($19,905.25) DOLLARS, together with legal interest from June 25, 1982 until paid, and for all costs of court.

. This was the sum of $2,794.73 which was the remainder of plaintiffs total deposit of $19,-905.25 which had not been sent by defendant to pay for the replica of the 1955 Thunderbird.

. Appellant contends the trial court erred in finding that the parties entered into a contract of mandate because:
(a) there was no express agreement giving defendant power to purchase an automobile for appellant; i
(b) all of the evidence of an implied mandate (which is still insufficient for the purchase of property) is in the form of declarations and representations of the purported agent and thus inadmissible; and
(c) the remaining evidence establishes a contract of sale.
Defendant contends the trial court was correct in finding that the parties had entered into a contract of mandate because:
(a) the trial court’s factual findings should not be disturbed absent manifest error; and
(b) defendant made no profit on the transaction.
Defendant further contends:
(a) that if a contract of sale existed, appellant assumed the risk of non-delivery;
(b) production of the automobile was a sus-pensive condition which was not fulfilled and therefore, its contractual obligation was discharged;
(c) if the parties to a contract of sale agree that the goods are to be manufactured by one manufacturer, the buyer implicitly assumes the risk of the manufacturer’s non-performance.

. Defendant only sent $1,000.00 to Model A & Model T as a deposit and this was not sent until August, 1981.

. Relying on Mr. Cox’s explanation of no profit for defendant, appellant appears to have overpaid defendant $212.48 and Mr. Cox admitted overpayment of this amount.

. The 1984 revision of Title III and Title IV of Book III of the La.Civil Code (Acts 1984, No. 331) did not take effect until January 1, 1985. Therefore, because this cause of action accrued in 1982, the old articles apply.

. LSA-C.C. art. 2997 provides:
"Thus the power must be express and special for the following purposes: To sell or to buy
[[Image here]]

. Art. 1887 provides in pertinent part: "Future things may be the object of an obligation ..."
Art. 2450 provides: “A sale is sometimes made of a thing to come: as of what shall accrue from an estate, of animals yet unborn, or such like other things, although not yet existing."

. Art. 2485. Buyer’s rights upon default In delivery
If the seller fails to make the delivery at the time agreed on between the parties, the buyer will be at liberty to demand, either a canceling of the sale, or to be put into possession, if the delay is occasioned only by the deed of the seller.

.Art. 2497. Restitution of price and expenses in case of rescission
In all cases where the buyer has a right to recede from the contract, the seller is bound to make him restitution not only of the price, if already received, but also of the expenses occasioned by the contract.