JASPER E. JONES, Judge.
This is a suit for the purchase price of a mobile home. The plaintiff-appellant is Tidwell Industries, Inc., a foreign corporation engaged in the manufacture of mobile homes. The defendant-appellee is Twin City Manufactured Housing, Inc., a mobile home dealer, domiciled in Ouachita Parish, Louisiana.
We reverse and award plaintiff a judgment for the purchase price of the mobile home.
FACTS
On or about April 14,1983, the defendant entered into an agreement to sell a double wide mobile home to Glenn and JoAnn Clark, residents of Arkansas, for a price of $38,889.00 on which price the Clarks paid a $15,000.00 cash deposit to the defendant. On the same date the defendant placed a telephone call to Dolphin Homes in Haley-ville, Alabama, a division of the plaintiff, and ordered the manufacture of the mobile home chosen by the Arkansas couple. The order was placed with the plaintiffs salesman, Richard Roberson, and the mobile home was to cost $28,435.00, less a $1,362.00 rebate if payment was made within 30 days. The defendant informed plaintiff’s salesman the mobile home was “pre-sold”, that the ultimate purchasers had tendered a $15,000.00 cash deposit and they had the cash to complete the payment. It was verbally agreed the order was subject to a “pay from proceeds” term of payment. This term of payment did not appear on any order form or invoice.
On May 6, 1983, Dolphin Homes shipped the mobile home and billed the defendant in accordance with the prior agreement. On this date the certificates of origin on the mobile home, showing the defendant to be the owner, were sent to the Ouachita National Bank in Monroe, Louisiana. This was the customary manner in which these sales were concluded. The defendant would obtain the certificate of origin from the bank at the time the purchase price was paid. This certificate of origin remained at the bank until August 26, 1983, when the defendant unilaterally directed the bank to return it to plaintiff. The defendant accepted delivery of the mobile home at its place of business in Monroe on May 9, 1983. The defendant had the mobile home moved to the Clarks’ mobile home site in Arkansas. After the mobile home was on site in Arkansas, the defendant, pursuant to its sales agreement with Clark, had a four-ton air-conditioner installed in the trailer as well as a washer and dryer and other furniture items not included in the purchase transaction with plaintiff.
The defendant never received the balance of the purchase price from the Arkansas couple and filed suit against the Clarks in Ouachita Parish and in Arkansas in an attempt to obtain a judgment for the balance of the purchase price on the mobile home.
*539 On January 13, 1984, the plaintiff filed this suit to collect the purchase price for the mobile home. The plaintiff asserted no payment had been received. The plaintiff prayed for the full purchase price of $28,-435.00 and for $1,700.00 in freight charges plus legal interest and all costs.
The defendant denied owing plaintiff any money and reconvened for two prior unpaid rebates on unrelated sales due from the plaintiff in the amounts of $1,810.00 and $1,958.00.[1] The defendant contended it did not owe the purchase price because it had not collected from the Clarks to whom it sold the mobile home.
In written reasons for judgment filed on June 19, 1985, the trial court held the “pay from proceeds” term created an agency relationship between the parties and that the plaintiff was due only the $15,000.00 deposit less the following out of pocket expenses incurred by the defendant:
Air conditioning $1,225
Washer and Dryer 650
Extra Furniture 256
Set Up Parts 400
Set Up of Home 2,000
Sales Commission 1,285
$5,816
The court also ruled that the defendant, as plaintiff in reconvention, was entitled to the prior rebates of $1,810.00 and $1,958.00.
By judgment signed on July 18, 1985, the trial court decreed that the defendant was acting as the undisclosed agent of the plaintiff and the defendant never had effective ownership of the mobile home. The court also ruled the “pay out of proceeds” term created an agency relationship for the sale of the property and the collection of the proceeds. The court further ordered the defendant to pay to the plaintiff $5,416.00 of $15,000.00 received as a deposit, with legal interest from date of judicial demand.[2]
The plaintiff has appealed. The plaintiffs assignments of error present the following issues for decision:
(1) Was the trial court clearly wrong in finding sua sponte that the “pay from proceeds” term created an agency relationship between the parties and negated the verbal sale of the mobile home?
(2) Was there a sale by plaintiff to defendant and if so, when was the purchase price due?
Issue No. 1 — The Agency Relationship. Was the defendant the undisclosed agent for the plaintiff?
An agency relationship to buy and sell cannot be created by implication but must be express and special. LSA-C.C. art. 2997.[3] It is the reputed agent’s burden to prove his special status and his own declarations and representations are not admissible to prove the fact of the agency. Keahey v. Osborne Ford-Lincoln-Merc *540 ury, Inc., 485 So.2d 182 (La.App. 2d Cir. 1986). The record reveals the defendant had bought mobile homes from plaintiff’s manufacturer for a number of years and enjoyed a good reputation with plaintiff as a customer. The defendant has asserted in this action a reconventional demand for a rebate on two mobile homes that it bought from plaintiff and paid for within thirty days upon delivery. The plaintiff has conceded these facts and that defendant is entitled to the rebates. There is no history whatsoever in this record of an agency relationship between these litigants.
At the trial held on June 13, 1985, Richard Rogers, the defendant’s president, testified the term “pay from proceeds” meant that if the defendant never got paid then there would be no obligation to pay the plaintiff. He did admit that when the order was placed with Dolphin Homes it was related that the mobile home was a “pre-sold” unit with a $15,000.00 cash deposit. He was unsure if Dolphin Homes knew that the unit was going to be delivered before the cash balance was collected. He also admitted that none of the $15,000.00 deposit had been remitted to the plaintiff.
Terry Oliver, sales manager for the plaintiff, testified the term “pay from proceeds” only meant that the defendant could defer payment. He testified this term was an accommodation to dealers so that short term bank financing would not be required. Plaintiff's policy required a “pre-sold” unit to be paid for within 45 days.
G.E. Johnson was accepted by the court as an expert in the mobile home industry in regard to the manufacturer-dealer relationship. He testified “pay from proceeds” is an exceptional term allowing the dealer to pay the manufacturer when the proceeds became available from the retail customer. The expert witness also related that such a term was done as a favor to help the dealers avoid short term financing and that it did not mean that if the ultimate buyer did not pay then the manufacturer was not due payment from the dealer. He concluded by relating that the dealer remains responsible to pay the manufacturer for the mobile home even if no proceeds were forthcoming from the retail customer.
Richard Roberson, plaintiff’s salesman who took the order from the defendant, testified by deposition he sold the unit to the defendant and the defendant was the one who was expected to pay for it. He related that “pay from proceeds” was based on the assumption that the dealer would have access to the proceeds within 45 days after billing on a “pre-sold” unit. He further explained that this term of payment was only a favor to the dealer so that no immediate payment would have to be made when the mobile home arrived on the defendant’s lot. He concluded by testifying the defendant had the absolute duty to pay for the mobile home whether the retail customer paid or not.
The record reveals the defendant never asserted a status as an agent at trial but argued his purchase contract with the plaintiff was subject to a suspensive condition relieving it of the obligation to pay the purchase price if the ultimate customer did not pay the remaining balance. The record does not show the defendant established an express mandate to sell the mobile home and collect the proceeds on behalf of the plaintiff. The “pay from proceeds” term was clearly understood in the mobile home industry to mean the defendant-dealer remained liable for the purchase price even if the ultimate retail customer did not pay the purchase price. Only the defendant’s president, Richard Rogers, testified that he understood the term to mean otherwise. As such, this term of payment, in and of itself, falls far short of that type of direct and explicit mandate needed to create an undisclosed agency to sell the mobile home and collect the proceeds for the plaintiff.
The trial court was clearly wrong in holding sua sponte that the “pay from proceeds” term created an undisclosed agency relationship for the sale of the mobile home and the collection of the purchase price.
Having concluded there was no agency relationship proven between the plaintiff and defendant, we now consider whether a *541 verbal contract of sale of the mobile home was perfected.
Issue No. 2 — The Verbal Sale of the Mobile Home.

Law On The Verbal Sale of Movable Property.

The contract of sale is an agreement by which one gives a thing for a price in current money and the other gives the price in order to have the thing itself. LSA-C.C. art. 2439.[4] The sale is considered perfect when there exists an agreement for the object and for the price even though the object has not yet been delivered nor the price paid. LSA-C.C. art. 2456.[5] The verbal sale of all movable effects is valid and if the price is in excess of $500.00 the contract must be proved by at least one witness and other corroborating circumstances. LSA-C.C. arts. 2441,1846.[6]
When the intent of the parties is doubtful the construction put upon it, by the manner in which it has been executed by both, furnishes a rule for its interpretations. The manner of execution of other similar contracts also provides a guide to interpretation. LSA-C.C. art. 2053.[7] In a doubtful case, the agreement is interpreted against him who has contracted the obligation but if the doubt arises for the want of a necessary explanation which one of the parties ought to have given, the construction most favorable to the other party shall be adopted. LSA-C.C. art. 2057.[8] “The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.” LSA-C.C. art. 2047.

Was the verbal contract of sale perfected?

As an alternative to the agency defense the defendant asserts that no sale between the parties was perfected as there was no agreement on the price and further contends that if there was an agreement on the price the term of payment was a sus-pensive condition that never came about. The defendant contends the “pay out of proceeds” term creates the suspensive condition for the reason that this description of the transaction means it would only have to pay the price when it collects it from the retail buyer.
*542 The record shows there was no disagreement as to the price of the mobile home. The plaintiffs order form and invoice reflect that the purchase price was $28,435.00 less a $1,362.00 rebate. At trial the defendant’s president, Richard Rogers, testified that the invoice price was correct. The meaning of the term “pay from proceeds” was explained by the witness, G.E. Johnson, a trailer dealer called as an expert witness by the defendant, who testified that in the mobile home industry the term did not mean that if the ultimate retail customer did not pay the price to the dealer that the manufacturer was not due payment. He testified sound practice required the price to be collected before the trailer is delivered to an out of state customer. Terry Oliver and Richard Roberson, the plaintiffs sales manager and salesman, respectively, corroborated the testimony of G.E. Johnson. The totality of the testimony of these three witnesses establish that a sale wherein the purchase price is to be “paid from proceeds” has the effect of relieving the dealer from paying the purchase price immediately upon delivery from its own surplus funds or by use of its floor-plan financing. Where the unit has been pre-sold and the retail customer is in the process of securing funds to pay the dealer, the manufacturer consents to a delay in payment until the dealer has collected from the retail customer. Only the testimony of Richard Rogers supported defendant’s interpretation of the term of payment. Terry Oliver, plaintiff’s sales manager, testified that in an earlier “pay out of proceeds” transaction he personally advised the defendant’s president, Rogers, that this plaintiff required in this type transaction payment in full 45 days after delivery. Plaintiff’s requirement for full payment in this type of transaction in not more than 45 days from delivery was further established by the testimony of Richard Roberson,
The defendant’s intent to accept the mobile home at the price on the invoice is shown by its action when the mobile home arrived at its lot in Monroe. It paid its salesman a $1,285.00 commission for selling the unit on May 12, 1983. It employed a mobile home mover to move the unit to El Dorado, Arkansas and set it up on the lot of defendant’s customer and it paid the mover the sum of $2,400.00 for this service. On June 22 it installed a four-ton air-conditioner in the unit as well as a washer and dryer. These items were not included in the unit when it was purchased from plaintiff. The defendant stipulated it had sold the mobile home to Glenn and Jo Ann Clark. When the defendant’s customers did not pay the balance of the purchase price of $38,889.00 the defendant sued the Arkansas couple in Louisiana for the balance attempting to obtain jurisdiction with a non-resident attachment of Clark’s, funds which defendant believed to be on deposit in a Monroe bank. When it developed the Clarks’ had no money in the bank and defendant’s non-resident attachment failed, the defendant sued the Clarks in Arkansas and at trial produced evidence it was still attempting to obtain an Arkansas judgment for the purchase price against the Clarks to whom it had sold the trailer. The plaintiff’s conduct in making out the order form and invoice in the name of the defendant, in having the certificates of origin reflect the defendant as owner and in having the mobile home delivered to the defendant’s place of business shows that it was the defendant who was intended to be the purchaser from plaintiff responsible for the quoted price subject only to a deferment in the time the payment was due for a period not to exceed 45 days.
The record shows that a contract of sale was perfected when the defendant placed the order with the plaintiff. The conduct of the parties and the interpretation given the “pay from proceeds” term within the mobile home industry compel the conclusion that a construction of the agreement most favorable to the plaintiff must be adopted. The defendant’s contentions that there was no agreement on the price and if there was, payment was subject to a suspensive condition that has not occurred, have no merit.
The defendant obliquely contends it should not be held accountable for the pur *543 chase price of the mobile home due to defects in the mobile home discovered by the Arkansas couple. The record shows the couple complained the carpet was of a lower grade than that which was ordered, that the counter top and cupboard handles in the kitchen were incorrect, that the trim and walls were bent and that the ceiling panels in the bedroom were splitting. The plaintiff responded to these complaints by making several repair trips to the mobile home. The record does not reveal the Arkansas couple was not eventually satisfied with the repair efforts. Richard Rogers, the defendant’s president, testified he never had any indication that the Arkansas couple was satisfied with the mobile home but defendant offered no evidence by any person who actually inspected the mobile home after the repair efforts were made that any of the problem areas were not corrected as requested. The defendant did not reconvene in redhibition or quanti mi-noris in accordance with LSA-C.C. art. 2520 et seq. We conclude this contention has no merit.
The plaintiff has established its right to the purchase price, legal interest and costs but not to the $1,700.00 in freight charges as this item was not included as a separate expense in the plaintiffs invoice or order form. The plaintiff agrees that the defendant’s reconventional demand for the two rebates on earlier sales of $1,810.00 and $1,958.00 were proven and this amount is offset against the invoice price of the mobile home.
CONCLUSION
The judgment is REVERSED AND SET ASIDE. The judgment is rendered to award plaintiff the purchase price for the mobile home less the deduction of $3,768.00 in rebates due the defendant as plaintiff-in-reconvention:
* # * ‡ * #
“IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of the plaintiff in the amount of TWENTY-FOUR THOUSAND SIX HUNDRED SIXTY-SEVEN ($24,667.00) DOLLARS together with legal interest from date of judicial demand and all costs.”
* * # % # *
All costs of this appeal are assessed against the defendant.

.Rebate claim copied from defendant's recon-ventional demand
A. Sale of Bennington II, No Rebate.
1. On June 22, 1983 Dolphin Homes sold Twin City Mfg. Housing, Inc. (1) Bennington II Sr#TWlALAS18611 for $15,330.00 on July 12, 1983 Ouachita National Bank paid Tidwell Industries on behalf of Twin City Mfg. Housing, Inc. $15,330.00 (21) days after date of original invoice Tidwell Industries was to mail Twin City Mfg. Housing, Inc. a dealer rebate in the amount of $1,958.00 as of today no money has been received from Tidwell Industries, despite repeated amicable demand.
This house was retail sold on September 22, 1983.
B. Sale of Dolphin II: No Rebate.
1. On August 2, 1983 Twin City Mfg. Housing, Inc. purchased (1) Dolphin II Mobile Home Sr# TW1ALAS18696 for $14,765.00 on August 16, 1983 Ouachita National Bank submitted $14,765.00 to Tidwell Industries on behalf of Twin City Mfg. Housing, Inc. Tidwell Industries was to submit a rebate of $1,810.00 to Twin City Mfg. Housing, Inc. as of today no money has been received from Tidwell Industries, despite repeated amicable demand.

. The trial court granted the plaintiffs motion for a partial new trial for reargument only after which it made no change in the original judgment.

. LSA-C.C. art. 2997 Cases where express power required
Thus the power must be express for the following purposes:
To sell or to buy ...

. Art. 2439. Sale, definition
The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.

. Art. 2456. Completion of contract by agreement as to object and price
The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.

. Art. 2441. Verbal sale of movable
The verbal sale of all movable effects, whatever may be their value, is valid; but its testimonial proof must be made agreeably with what is directed in the title: Of Conventional Obligations.
Art. 1846. Contract not in excess of five hundred dollars
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

. Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

. Art. 2057. Contract interpreted in favor of obligor.
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.